IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMIL COOPER,                                           NO: 20-CV-2430

    VS.                                                 JUDGE Yvette Kane

UNIT MANAGER MILLER,
JOHN WETZEL, CORRECTIONS OFFICER MCLELLAN,
MAJOR HALDMAN, DEPUTY SUPERINTENDENT
HOUSER, SAFETY MANAGER BREESE, SERGEANT
WATSON, PROGRAM MANAGER T.MILLER,
CORRECTIONS OFFICER NEWPHER, FOOD
SERVICE MANAGER WEAVER, FACILITY MANAGER
MANAGER SAMPSEL, UNIT MANAGER D.A
KUHN, CORRECTIONS OFFICER KACHIK,
CORRECTIONS OFFICER NAREHOOD,
CORRECTIONS OFFICER FULTZ, CORRECTIONS
OFFICER HOLDREN, CORRECTIONS OFFICER
EYER, SUPERINTENDENT MARK GARMAN
AND GRIEVANCE COORDINATOR BURBAKER,

FILED
HARRISBURG, PA

JUN - 1 2021

PER _____ *Jn*
DEPUTY CLERK

Jury Trial by Demand

AMENDED COMPLAINT

1) This Court has jurisdiction over this matter pursuant to 42 U.S.C. 1983,1331,1343 and 1367.

2) Pursuant to 28 U.S.C. §§2201, and 2202 this court has jurisdiction to declare the rights of the plaintiff and to grant all further relief found proper and just.

**Parties**

3) Plaintiff Jamil Cooper is and was at all times mentioned herein is a prisoner of the Pennsylvania Department of Corrections (DOC) and is currently confined at the State Correctional Institution (SCI) Rockview, located at Box A, Bellefonte, PA 16823

4) At all times mentioned herein this complaint the Plaintiff has been subjected to gross inhumane and substandard prison conditions not consistant

with his sentence and was the victim of retaliation by the design of the defendants.

5) Defendant John Wetzel (Wetzel) is the Secretary of the Pennsylvania DOC.

6) At all times relevant and material hereto Wetzel engaged in the control direction, and surpervision of the protocols of the DOC, and its institutions, agents, servents, employees and workmen specifically all named corrections employees named in this complaint and all other staff whoes names are legible or illegible upon review of the records that participated in the intentional and knowing disregard of the excessive risk to the plaintiff's overall health and saftey.

7) At all times relevant and material hereto John Wetzel engaged in the control direction and supervision of the protocols of the DOC specifically all named corrections employees named in the complaint and all other staff whose names are legible or illegible upon review of the records that participated inthe retaliation against the plaintiff for exercising his right to file administrative complaints for the denial of constitutional rights, and or seeking civil remedy.

8) Wetzel is also responsible for creating loopsholes for his employees workers, and agents that work under his supervison as the Secretary for the DOC whereof his staff are not punished for the deprivation of civil rights and therefore because of the grey areas in his policies he provides no protection for inmates, whereof numerous acts of staff misconduct goes unchecked by prison administration, and as policy maker Wetzel has knowledge of the rules regulations and all the existing policies.

9) Wetzel as Secretary of the DOC has taken an oath to uphold the Laws of the United States and those of the Commonwealth of the Pennsylvania and at all times mentioned herein operated under color of state law and is being sued



in his individual capacity, Wetzel's place of business can be located at 1920 Technology Parkway, Mechanicsburg, PA 17050.

10) Defendant Mark Garman (Garman) is the Superintendent of SCI Rockview, As superintendent Garman's responsibility is to establish and enforce rules, policies, and procedures that are in conformance with the law, and is responsible for the overall safety of the population of inmates at Rockview for the Pennsylvania DOC.

11) Garman has knowledge of all DOC policies and directs and encourages his subordinates and or staff to violate clearly established law, because is is more convenient and has no legitimate penological purpose.

12) At all times mentioned in this complaint Garman is the Superintendent of Rockview and establishes his own policies rules and customs that do not comply with clearly established law because it is more convenient for his own staff.

13) At all times mentioned Garman operated under color of state law and is being sued in his individual capacity, Garman's place of business can be located at Box A, Bellefonte, PA 16823.

14) Defendant Safety Manager Breese is the Correctional Institution Safety Manager for Rockveiw (Breese) and is responsible for the implementation of all DOC policies under the auspices of Safety and Environmental Protection programs.

15) Defendant Breese is responsible for complying, reviewing, and analyzing all staff and inmate accidents, including monitoring and conducting Safety inspections as required.

16) At all times mentioned hereto Breese is responsible for the deterioration of the living conditions and the safety concerns of the housing areas and the deterioration of the Inmate Dining Halls at Rockview and at all

at Rockview and at all times mentioned operated Under color of State Law.

17) Breese is being sued in her individual capacity and her place of business can be located at Box A, Bellefonte,PA 16823.

18) Defendant Deputy Superintendent McMahon (McMahon) is the Deputy Superintendent for facility management and is the chairperson for the Safety Committee and reviews all reports provided by the Safety manager and condones in the disregard to the overall health and the safety concerns of all inmates residing at Rockview.

19) Mcmahon by ignoring the leaking ceilings and the numerous other health concerns of Rockview and has openly shown contempt for the inmates of whom he has the responsibility to ensure the health and safety of.

20) Mcmahon is also a member of the Program review committee (PRC), the PRC reviews the first level of misconduct appeals and rubber stamps the decisions of the hearing examiners even if it is in violation of clearly established law.

21) Mcmahon at all times mentioned herein operated Under State Law and is being sued in his individual capacity, his place of business can be located at Box A Bellefonte,

22) Defendant Deputy Houser (Houser) is the Deputy Superintendent for Centralized services or (DSCS) as the "DSCS" Houser is a member of the safety committee.

23) As a member of the safety committee houser rubber stamps ficticious safety reports authored by the safety manager and ignores the dangerous living conditions of forced upon inmates.

24) Houser ignores the continuous leaking ceiling and faulty fire surpression system that is used as the air conditioner of the officers of D-building which would break often.

25) Houser is also a member of the PRC and rubber stamps the decisions of hearing examiners even if it in violation of clearly estblished law.

26) At all times mentioned herein houser acted under color of state law



at Box A, Bellefonte, PA 16823.

27) Defendant Program Manager T.Miller, (T.Miller) holds the position of the Corrections Classification Program Manager or "CCPM" for Rockview and is also a member of the Safety Committee and the "PRC".

28) T.Miller as a member of the Safety Committee has routinely ignored his responsiblity as it pertains to the safety of the inmates of Rockview. T.Miller makes rounds visiting every housing area of Rockview and is the longest tenured member of the PRC and has watched the deterioration of the insitution as the longest tenured member of the Safety Committee at Rockview.

29) T.Miller as a member of the PRC ignores his responsibility as it pretains to appellate review of misconducts that comes before him alleges violation of law and encourages the denial of due process during hearings.

30) T.Miller knowingly violates clearly established law and at all timesmentioned herein this complaint operated under color of state law, and his place of business can be located at Box A, Bellefonte, PA 16823.

31) Defendant Major Haldman "Haldman" Major of Unit Management retains the position of the controling supervising officer fro every housing area at Rockview, and at all times mentioned herein operated under color of stated law.

32) Haldman has been personally notified about the leaks in the roof of D-block and the black mold in the showers and this defendant is on notice about the lack of access to cleaning supplies and does not care about inmate health and safety.

33) during the modified lock down of Rockview fro social distancing purposes several inmates including Mr.Cooper told Haldman that the showers are only cleaned once a day, contrary to prison policy, along with no access to cleaning supplies and Haldman's response was okay and then continued her way

walking on, Haldman could'nt care less about inmate health and safety.

34) Defendant Haldman's place of business can be located at Box A, Bellefonte, PA 17050.

35) Defendant Sergeant Watson (Watson) Defendant Watson with deliberate indifference to the massive leak of water flooding into the cells that housed the plaintiff and several inmates simulary situated on D-block.

36) Watson has a dismissive attitude toward the overall health of the inmates under his supervison and could not care less if a inmate was to die inhis pressence.

37) Watson at all times mentioned herein is the sergeant of D-block at Rockview and operated under color of law, he is being sued in his individual capacity, Watson's place of business can be located by his employer John Wetzel at 1920 Technology Parkway, Mechanicsburg, PA 17050.

38) Defendant Correcitons Officer Newpher (Newpher) is a corrections officer at Rockview that was asigned to D-block and at all times mentioned in this complaint operated under Color of State Law, and is sued in his individual capacity.

39) Newpher's place of business can be located at Box A, Bellefonte, PA 16823.

40) Newpher has no problem with the execution of retaliating against a inmate for his exercise of their right to acces the court.

41) Defendant Corrections officer McClellan (McClellan), is a corrections officer of D-block and he has a voiciferous disregard for the overall life of the inmates of Rockview and he boldly contributes to the unsanitary conditions of D-block.

42) McClellan engages in retaliation of inmates for the exercise of their federally protected conduct.

43) McClellan at all times mentioned herein this complaint operated under color of state law, and is being sued in his individual capacity.

44) Defendant McClellan's place of business can be located at Box A, Bellefonte, PA 16823.

45) Defendant Food Service Manager Weaver (Weaver), is the supervising and controling officer of the culinary building at Rockview.

46) With disregard for the health of the inmate population Weaver has forced the inmates to eat in under inhumane conditions in the inmate dining hall.

47) Weaver refuses to maintain the inamte dining hall requiring inmates to practically eat in wild life conditions not suitable for men to eat in a indoor location.

48) Weaver at all times mentioned herein operated under color of state law and is being sued in his individual capacity and his place of business canbe located at Box A, Bellefonte, PA 16823.

49) Defendant Unit Manager Miller (Miller) is the unit menager of D-block and as the top ranking staff member of D-block Miller has intentionally subjectewd the plaintiff and other simulary situated inmates to harsh and inhumane living conditions not suitable for insitutions.

50) Miller condones the retaliation of inmates by his staff that he supervises and he ensures them that they have his full support in the surpression of complaints.

51) Defendant Miller at all times mentioned herein operated under color of state law and his place of business can be located at Box A, Bellefonte, PA 16823.

52) Defendant Grevance Coordinator Burbaker (Burbaker) is a grievance Coordinator at Rockview, it is his job to file and to facilitate grievances tothe right departments.

53) Burbaker is not a impartial party and he engages in the surpression



of free speech by misfiling grievances and encourages the actions of his coworkers and is indiffernt to the concerns of the inmates of Rockview.

54) Brubaker at all times mentioned herein operated Under Color of State Law and his place of business can be located at Box A, Bellefonte, PA 16823.

55) Defendant Facility Maintenance Manager Sampsel (Sampsel) is the Maintenace Manager for Rockview, and is the supervising official that oversees and personally engages in almost every maintenance issue at Rockview.

56) Sampsel makes sure to maintain all staff occupies areas while allowing the conditions of inmate housing and dining areas are falling apart, refusing to correct damage property in a timely manner or to correct it at all, and he gives the word on whether or not any construction job is done at Rockview whether it is plumbing, electrical, or any other maintenance concerns.

57) Sampsel is indiffernt to the conditions of Rockview as far as it pertains to the areas occupied by inmates, and can order the correction of numerous maintenance problems of Rockview if he wasnted to, and make it a safer environment for the inmates, if he wanted to.

58) Sampsel at all times mentioned herein operated under color of state law and he is sued in his individual capacity, and his palce of business can be located at Box A, Bellefonte, PA 16823.

59) Defendant D.A. Kuhn (Kuhn) is a unit manager for D-block at Rockview and has allowed for D-block to have multiple health risks to no concern for the safety and health of the inmates of the housing area that he supervises and at all times mentioned herein Kuhn operated under color of state law.

60) Kuhn's place of business can be located at Box A, Bellefonte, PA 16823.

61) Defendant corrections officer Fultz (Fultz), Fultz works on the

10:00pm to 6:00am shift on D-block at Rockview and has allowed for the damage

of inmate property without warning, with a clear indifference to inmate health

and the property of those inmates, allowed for flood waters to enter into

prisoner cells while the inmates slept overnight as waters flooded into

inmates cells on more than one occasion while he was making rounds.

62) According to Daniel J. Gallagher of the PA Attorney Generals Office

Fultz worked on D-block on the nights of Dec 3, 2018 and Jan 23, 2019, and at

all times mentioned herein Fultz operated under color of state law.

63) Fultz is being sued in his individual capacity at all times

mentioned and his place of business can be located at Box A, Bellefonte,

16823.

64) Defendant Corrections Officer Kachik (Kachik), as according to

Daniel J. Gallagher of the Attorney Generals Office, Kachik worked as a

corrections offcer on D-block on the Dec 3, 2018, during the 10 to 6 shift,

and with indifference to inmate health and safety watched as flooding waters

entered into inmates cells over night as they slept, Kachik did nothing and

said nothing and according to defendant Watson's sworn testimony Watson filed

the workorder to call for maintenance to stop the flooding. At all times

mentioned herein Kachik operated under color of state law and is sued in his

individual capacity and his pace of business can be located at Box A

Bellefonte, PA 16823.

65) Defendant Corrections officer Narehood, "Narehood", according to

Daniel J. Gallagher of the PA Attorney Generals office worked on D-block on

the date Dec 3, 2018 during the 10 to 6 shift, and with indifference to imate

health and safety and the property of the inmates watched flooding waters

enter the inmates cells all night, and did nothing, according to defendant

Watso's sworn testimony.

67) At all times mentioned herein Narehood operated under color of

state

law and is sued in his individual capacity, his place of business can be located at Box A, Bellefonte, PA 16823.

68) Defendant Corrections Officer Holdren (Holdren), according to Daniel J. Gallagher of the PA Attorney generals office Holdren works at Rockview on the 10:00pm to 6:00am shift, and on the date of January 23, 2019, Holdren worked on D-block. Holdren with indiffernce to inmate health and safety watched and floods of water bleed into inmate cells overnight all while the inmates slept and said nothing.

69) At all times mentioned herein Holdren operated under color of state law and is being sued in the in his/her individual capacity. Holdren's place of business can be located at Box A, Bellefonte, PA 16823.

70) Defendant Corrections Officer Eyer, (Eyer), according to Daniel J. Gallagher of the PA Attorney Generals office worked on D-block at Rockview on the date of January 23, 2019, on the 10:00pm to 6:00am shift and it was Eyers job to make rounds on level 4, 4 range and as Eyer made his rounds on 4 range Eyers with indiffernce to inmate health and to the preservation of inmate property watched as water flooded into the cells of inmates without a care.

71) Eyer at all times mentioned operated under color of state law and isbeing sued in his individual capacity, and his place of business can be located at Box A, Bellefonte, PA 16823.

**Preliminary Statement**

72) Plaintiff raises claims of Cruel and Unusual Punishment, Deliberate Indifference, Retaliation, and the Denial of Due Process in violation of the 1st and 8th Amendments of the United States Constitution.

**Statement of the Claim**

73) Out of appearant fear of becoming sick or otherwise dying from a terminal illness in prison because of the blatant disregard for the health of the Plaintiff, Mr.Cooper chose to file Grievance #855986.

74) The State Correctional Institution Rockview is a prison that is over 100 years old and is need of drastic measure to maintain the up keep of its buildings to ensure the safety of it's prisoner population from sevre injury, sickness from disease or death.

75) D-block is a housing area with five levels with two sides and 25 cells on each side of the block front side and back side, with the appearance of a bird cage,a nd is stacked so high that is has a dizzing effect on a person the first time that you enter the housing area.

76) After being informed by way of the Corona Virus task force and listening to several medical professionals stressing the importance of keeping oneself clean, by the manditory washing of hands and the surrounding areas that one resides at with bleach and warm water which is the recommended best way to prevent the spread Covid-19. Plaintiff gave notice to Rockview administration about several health violations.

77) In Greivance #855986 the Plaintiff gave notice about pigeon infestation, and the flying around of pigeons on the housing area, bird feecews and spit on the walls that are in need of being cleaned, the lack of and denial of access to cleaning supplies by housing staff to clean ones cell among other health code problems that places the plaintiff and other inmates in danger of contracting a disease, becoming sick, or even causing death.

78) There are various fire safety violations and the lack of a lighted fire exit signs along with wooden stairways, the fact that the fire surpression system was inoperable along with the lack of proper ventilation of the housing area being that it houses almost 450 people, and no fire visable fire extinguisher on the housing area.

79) The Fire Suppression system is used by Corrections officers as a airconditioner, so often that when it is time for the system to really be used it is ineffective.

80) The Restricted Housing Unit (RHU) is placed on the lower three levels on the backside of D-block, also called 'the Hole'.This was placed in the back od d-block by the design of defendant Garman.

81) When a prisoner is disruptive in the RHU and a cell extraction if used, staff uses a riot spray named "Oleoresin Capsium" or "OC" in order to subdue a noncompliant or disruptive prisoner, however when this used in the RHU, the inmates of D-block in population are unaware of what is taken place and they become victims of the spray some locked in thier cells sleep and awake to a gas chamber like circumstance. this is common practice at Rockview.

82) When a prisoner sets fire to his mattress while in the RHU the smog rises upto the cells of inmates of D-block unaware of what is going on. Cant breath because of the inactive fire supressions system that is broke because it is used as a part time airconditioner for the staff the lack of ventilation along with covered vents to accomodate accommodate a circular air venting system for staff offices, there is no existing sprinkler system on D-block or exit plan incase of fire with wooden stairway D-block is a deathtrap.

83) Inmates in the RHU makes noises all night long causing the prison population of D-block unrest from the yelling that is constant all night.

84) Plaintiff was deficated on by pigeons on numerous occasions and because of the disregard of human life the potential risk of exposure to disease that comes from the pigeons dwelling on the housing area like "psittacosis" among other avian disease is at a all time high, these birds have been dwelling on housing areas at Rockview for years.

85) This is a on going conditions problem on D-block that has never been resolved, Mr.Cooper has filed numerous grievances pertaining to the fire safety, sanitation, hygiene, and pigeon infestation in grievance#'s 552861 2015, 733150 2018,and then 855986 2020, spoke to D.A Kuhn, Miller, and Sampsel they all did nothing.

86) On the date of December 3,2016 the Plaintiff woke up in the early

hours of the morning to find that the prison cell that he was housed in was flooded with water from a outside source coming into his cell, damaging books,certain correspondances between the plaintiff and his lawyers, along with eivdence and witness statments relating to separate but active cases Jamil Cooper vs. PA. DOC.et al 16-1958 & Jamil Cooper vs. Lieutenant Sherman. et al 17-CV-2064, these items were arranged in files on the floor of the prison cell.

87)Mr.Cooper filed administrative grievance #775488 requesting for the preservation of video from the previous night and for the identification of the source of where the water originated from because the water was on the tier that his cell was housed on and it has entered into not only the plaintiff's cell but several other prisoner cells.

88) THe Plaintiff after cleaning his cell went to the Unit Management area and he spoke to counselor William serifini about his cell being flooded , then plaintiff not wanting to charged for it notified Serifini about a prison policy that was 277 pages long (fiscal Administration) that was in the plaintiff's posession when the cell was flooded and asked that the Library be notified about the damage to this printed material, and Serifini notified the Education dept. about the waterlogged booklet.

89) After several days upon an interview with Unit Manager Miller, Mr.Cooper was required to produce some damaged items from the flood and upon presentation of some of the pages sticking together Miller told the Plaintiff that even though some of the words are on the pages are smeared or sticking together your fine.

90) Defendant Miller offered to reimburse Mr.Cooper with copies of the prison policies that the plaintiff produced that was destroyed on the contengency that Mr.Cooper was to sign a Withdrawl of his grievance form.

91) When Mr.Cooper refused to withdraw his administrative complaint defendant Miller then proceeded to terminate the interview refusing to reimburse the plaintiff for any damages that Mr.Cooper suffered and after giving notice to the Plaintiff that DVD recordings were provided but they are of the wrong date because of a mistake that Mr.Cooper placed on the initial grievance.

92) After that Mr.Cooper sent a request to staff form to Grievance coordinator Nicki J. Paul and asked for the preservation of the video from December 3rd, along with the camera numbers coinciding with the times and of the incident.

93) After appealing the denial of administrative relief from Miller to the Facility Manager Defendant Garman the Plaintiff was met by the greivance coordinator Nicki J.Paul and was presented with copies of the prison policies that was destroyed, during the flood and then asked the plaintiff if he was willing to sign the withdrawl of grievance form to witch Mr.Cooper was not willing to do so.

94) According to Daniel J.Gallagher of the PA Attorney Generals Office on the date of December 3, 2018, that defendants Kachik, Fultz, and Narehood, worked on D-block and each defendant made rounds on 4 range on the night in question and each officer electronically checked in varifying that the rounds was being made that night being that they each in taking turns watched as waters entered in to various inmate cells not notifying the inmates of the potential harm of slip in fall when climbing out of bunk beds or the destruction of property.

95) Corrections staff have a responsibility to prevent the threat to inmate life, vandalism of property or the destruction of property and the defendants were not concerned with or aware of that obligation.

96) On the date of January 23,2019 after waking up in the early morning

hours Mr.Cooper woke up to his prison cell flooded again. The Plaintiff after realizing that the flood came from outside of the prison cell again, the Plaintiff after examining that the flood came from outside of the prison cell the plaintiff hearing footsteps sloshing in the water knowing that it was a 10 to 2 shift corrections officer asked the officer where was the water coming from, and is there gonna be maintenance staff to stop it.

97) The Corrections officer told Mr.Cooper without stopping said "they know about it" and he kept walking by, giving no notification to any of the sleeping inmates to pick up their property off of the floors, nobody was told about the flood water.

98) When breakfast was called the Plaintiff and several other inmates went downstairs to the sergeants desk to ask for squeezes and Defendant Watson told Mr.Cooper "NO", hearing that the other prisoners not taking no for a answer took the squeezes that was available for use by the Shower workers, ironically, Watson has given sworn testimony that he called maintenance and put the workorder in.

99) Mr.Cooper among other inmates that were housed on his level took turns using the two squeezes and the one mop and bucket.

100) Unlike the previous time that Mr.Cooper's cell was flooded whereof there was given to the Plaintiff no reason for the flood and where the waters came from, evenafter the filing of grievances, and there was no instruction given on how to prevent the damages in the future, the floods came from a vent in cell #416 some twenty five feet away from Mr.Coopers cell.

101) As explained to the Plaintiff by the two inmates that occupies that cell, waters flushed out of the vent in the cell like a fire hydrant all night.

102) Massive Amounts of water flooded D-block pooring over the range and entered into every cell from #416 to #420 some 50 to 60 feet away.

103 Water entered into the Plaintiff's cell damaging documents related to other active filings, affidavits, motions, and correspondances

between Mr.Cooper and his Counsel, the flood caused numerous items belonging to the plaintiff to be destroyed, dictionaries, purchased books, commissary purchased towels, rugs, and foot wear.

104) Mr.Cooper filed grievance #784957 and asked for the preservation ofthe video from 8:15pm the previous night throughout 12:00pm the next morning.

105) Not only was flood water coming in through vents, but also from the roof of D-block onto the common area which is common place whenever it rains or when there is snow melting on the top of the roof now its coming through vents in peoples cells.

106) Flood waters come through the holes in the roof of D-block onto the common areas where prisoners sit at tables and congregate during recreation hours.

107) When the leaks are happening its like its raining indoors. Trash cans and buckets are placed to catch the water as it falls onto the block area where they can be places. The bad thing is that the leaks are right in front of the Unit Managers office. This problem is not hidden from the D-block unit managers defendants Kuhn or Miller.

108) On the date of November 20, 2019 Rockview was on a lock down during this lockdown there was several piles of food garbage litered up and down 4 range there was macaroni food garbage in front of the plaintiff's cell.

109) The food garbage was thrown there by the inmate in the cell next to Mr.Cooper in #419 cell. Between the hours of 2:00pm and 4:00pm several corrections officers walked past the plaintiff's cell with no problems including the block sergeant for that shift, officers either walking arounf the garbge or stepping over it.

110) Defendant McClellan walking by took the time to stop in front of the Plaintiff's cell and examine the food garbage, and then with a swinging motion McClellan kicked the food garbage into the Plaintiff's cell.

111) Simultaneously while talking to his cellmate the plaintiff watched McClellan kick the Macaroni salad into the cell and onto the plaintiff's rugs, damaging towels that was on the floor, macaroni salad was inside the sneakers of the Plaintiff damaging property, this started a heated debate between the plaintiff and McClellan because Mr.Cooper watched this blatant act of vandalism to which defendant McClellan did not care about the fellings about the plaintiff.

112) Plaintiff filed grievance #336903 about McClellan kicking the garbage into his cell along with various housing maintenance problems that puts the lives of the prisoners of D-block in danger, including showers not being regularly cleaned, floors not being regularly swept and mopped, and the lack of access to cleaning suplies.

113) While trying to exhaust this grievance the plaintiff received numerous hurdles and resistance of assigned grievance officers to timely answer administrative grievance #836903.

114) Because of this fact the plaintiff filed a separate grievance which is unheard off because that grievance was not timely answered and he did not want this matter to be swept under the rug Grievance #842364.

115) After facing the reality that Rockview staff was resistant in not only answering grievance #836903 and reprimanding McClellan and reimbursing the plaintiff for damaged property, Mr.Cooper sent a copy of everything that he had filed and received at that point to the office of inmate grievance and appeals and gave notice of the institution's refusal to comply with the grievance process, Mr.Cooper infact asserted that the insitution defaulted February 13, 2020.

116) The office of inmate grievances and appeals in their response refused to address the complaints of the Plaintiff and alleged that the defendants had more time to respond to the plaintiff.

(17)

117) After receiving the response of Defendant Ganman and no relief was granted to the plaintiff, so he appealed again to the office of grievances and appeals, and in response to that appeal the office never addressed the complaint at all, alleging that the plaintiff failed to include his initial grievance with the appeal dated April 30, 2020.

118) Sometime after the filing of the initial grievance #836903, Mr.Cooper was approached on 4 range by Defendant Newpher while working on 4 range, he told the plaintiff that he seen the video of McClellan and while laughing about it Newpher said to the Plaintiff that he cant see why the plaintiff would be mad, but then stated dont you think its time to leave this thing alone.

119) The Plaintiff immediately walked away from away not responding to Newpher at all.

120) plaintiff on the date of Feb 20, 2020 offered several commissary purchased items to another inmate for trade purposes.

121) On the same date before proceeding to an recreations event Mr.Cooper was waiting out of the cell of another inmate after realizing that a deal could not be accomplished between the two.

122) As Mr.Cooper was walking down the range with a net bag full of his purchased items he was approached by defendants McClellan and Newpher and Newpher snatching the bag away from the plaintiff and McClellan escorting the plaintiff back to his prison cell cursing the plaintiffdaring him to say something smart and inviting the plaintiff to write about the bag that was confiscated from him at his misconduct heaering and dared the plaintiff to spell the name right.

123) Mr.Cooper said that he had a receipt for everything that was taken from him, and McClellan's answer was so what.

124) That night Mr.Cooper received misconduct #D428421 alleging that the plaintiff entered into another inmates cell and came out with a bag of commissary.

125) The plaintiff wasn't charged with theft as if he was some sort of thief but was charged with presence in an unauthorized area and loaning and barrowing to which the plaintiff denies both of the alegations against him.

126) Mr.Cooper appeared in fron to of defedant Miller for a misconduct hearing informal, on the date of Feb 26,2020 and no mention was made of the confiscated items taken by McClellan and Newpher that belonged to Mr. Cooper.

127) Mr.Cooper asked where was the confiscated items and Miller told the Plaintiff that there is no bags of coffee in my office or soaps.

128) Mr.Cooper was sanctioned without even being asked for a version of what happend he was just asked if he want to go through the informal hearing or if he wanted to go to the hearing examiner, and then given a punishment of 14 days cell restiction.

129) While eating in the inmate dining hall Mr.Cooper abruptly got up from the table he was eating at because inmate EM-2356 M.Booker was sitting ther bleeding from several open sores on his face and head.

130) Mr.Cooper filed Grievance #801019 which was rejected by the greivance coordinator stating that Mr.Cooper failed to indicate that he was personally affected by the Department or facility.

131) Mr.Cooper appealed his grievance to no avail because the plaintiff did not know what Booker was suffering from and Mr.Cooper lived on the same housing area as Booker and they shared the same common space touching the samedoor knobs and they use the same telephones, and for the span of 10 months Booker walked around with open cherry red flesh wounds on his face and head and the staff of the housing area and in the dining halls were not phased by the open flesh wound of this man while he was exposed to the inmate

population.

132) When asked about the injuries on his face and head Booker said that "medical wont tell me whats wrong with me"

133) Grievance #801019 was never resolved and inmate Booker walks aroundthe entire compound with open sores that bleed at that time the plaintiff counted six sores and it is not determined wheher or not what he hadwas contagious or not.

134) there is no DOC policy that forbids inmates to walk around with open flesh wounds in common areas. Even if the man scratches those open sores and touches things with bloody fingers.

135) This matter was never investigated even though the plaintiff gave proper written notification about a nman walking around in prison with open bleeding sores

136) There are numerous sanitation violations in the inmate dining hall,placing the safety, health, and overall life of the inmates of Rockview at risk.

137) There are leaks in the ceiling of the inmate dining hall. there are (3) three dining areas for inmates and they all have leaks with fountain like water runinng down the walls and splashes onto the tables and food trays while inmates try to eat.

138)The inmate dining halls has inmates with serious mental health problems serving food and drinks; some with excessive hygiene problems that would never be allowed to step foot into the staff dining hall.

139) Disgusted with the lack of care for the Plaintiff and and the otherRockview inmates, Mr.Cooper filed administrative grievance #798305 and relief was not afforded to the plaintiff, and to this very day, whenever it rains, there are puddles on the floor and inmates are cautioned by repurposed

trash cans and wet floor signs to prevent accidents but people fall anyway.

140) At the same time there was a new roof laid on the building where the offices of the members of the safety committee.

141) Hot boxes, steam tables, and combination ovens meant to keep inmate food hot are broken, inoperable and vermin-infested, and inmates receive cold food. Culinary staff blames the maintenance dept. for broken hot boxes and cold food in the dining hall.

142) Rockview staff take Holiday and as long as the count of inmates is right there is no care for the well being of the prisoners.

FIRST CAUSE OF ACTION: CRUEL AND UNUSUAL PUNISHMENT

UNDER §1983 AGAINST ALL DEFENDANTS IN THIS ACTION

143) The Plaintiff hereby incorporatres by reference paragraphs one through one hundred and thrity five (1-135)

144) All named parties in action are defendants and arecomplicit in the deterioration of the facilities of SCI Rockview as long as it does not interfere with their paychecks.

145) The defendants are responsible for subjecting the plaintiff and simulary situated inmates to life threatening conditions.

146) The defendants have exposed the Plaintiff to numerous contractable diseases like covid-19, staph infections, psiticosis, and many other infectious viruses.

147) The Plaintiff and other inmates have been force to eat cold meals in from the inmate dining hall while water drips on table and off of walls from the ceiling.

148) Defendants allow for inmates to undergo unlivable circumstances whlle the structures of housing areas are falling apart.

149) Defendants allow the continued flooding of housing and dining areas that inamtes of Rockview have no choice but to reside at, and dine at.



SECOND CAUSE OF ACTION: RETALIATION UNDER 42 U.S.C. §1983

AGAINST DEFENDANTS NEWPHER, McCLELLAN, GARMAN, MILLER, AND WETZEL

150) plaintiff incorporates paragraphs one through one hundred fortynine (1-149).

151) Defendants Newpher and McClellan intentionally devised a plan/ scheme to punish the plaintiff for the exercise federally protected speech.

152) Because the Plaintiff was bold enough to notify prison administrators of the actions of McClellan by way of using the administrative grievance process, the Plaintiff became the object of harassment, abuse, and retaliation by defendants Newpher and McClellan.

153) Defendant Miller condones the retaliation against inmates on his housing area by his staff he supports them and gives assurance that they are supported in what they do.

154) Defendants Garman condones retaliation against inmates by his staffas long as they can cover their actions, and he has no instutional policy fobids the retaliation against inmates for the writing of grievances.

155) Defendant Wetzel has no policy that prohibits retaliation and Wetzel's inaction to install rules that prohibit the retaliation against inmates by prison staff is evidence that he Wetzel is complacent with the unlawful action of retaliation.

THIRD CASUE OF ACTION; RETALIATION DENIAL OF DUE PROCESS

UNDER 42 U.S.C. §1983 AGAINST DEFEDANTS UNIT MANAGER MILLER

GARMAN, NEWPHER, AND McCLELLAN

156) Plaintiff incorporates by reference paragraphs one through one hundred fifty five (1-155).

157) Defendants Newpher, McClellan, initiated a ficitious misconduct against the plaintiff, in furtherance of retaliating against Mr.Cooper causing causing the plaintiff to lose personal property.



158) Defendant Miller conducted a ficitious misconduct hearing in the furtherance of retaliating against the plaintiff, never conducting a hearing on the facts, just initiating punishment.

159) Defendants Garman and Wetzel have estblished rules taht allow for the continuance of retaliation and the denial of due process at ficitous misconduct hearings to punish inmates and to intimidate and silence their speech.

FOUR CAUSE OF ACTION: STATE TORT CLAIM OF
NEGLIGENCE AGAINST ALL NAMED DEFENDANTS

160) Plaintiff incorporates paragraphs one through one hundred fiftynine (1-159).

161) The inactions and actions of the defendants by not maintaining the housing area of D-block allowed for the destruction of property inside the prison cell of Mr.Cooper on (2) separate occasions, by way of flood waters flowing freely into Mr.Cooper's cell overnight.

162) Defendants have placed no obstruction in front of the prison cells on D-block to prevent water from flooding into prison cells on D-block.

163) After the first flood into Mr.Cooper's prison cell which damaged various items; books, legal correspondances, rugs and towels, there was no obstruction placed in front of the plaintiff's cell to prevent it from happening a second time.

164) Defendants have never found out where original flood waters have come from the first time that the plaintiff's cell was flooded into, never taking preventative measures to prevent future damages.

165) The defendants have not made the efforts to prevent and watch for deterioration of buildings at Rockview.

FIFTH CAUSE OF ACTION: DELIBERATE INDIFFERENCE
UNDER 42 U.S.C. §1983 AGANIST ALL NAMED DEFENDANTS

23

166) The plaintiff incorporates by reference paragraphs one through one sixty five (1-165).

167) With actual knowledge of leaking roofs in the housing areas and the inmate dining halls, defendants risked the life of the plaintiff and the lives of many inmates by not taking action to change the manifest damage areasof the institution.

168) Defendants have all been complicit in the destruction of the plaintiff's personal property by actively and willingly watched flooding waters poor into the plaintiff's cell over night.

169) Defendants have no problem with the infestation of pigeons on the housing area deficating on prisoners.

170) With disregard to prisoner life, the defendants chose to fix the roof top of office buildings and not the roof tops of the housing areas of the prisoners actually live at Rockview.

171) Without care of the Plaintiff's health or wellbeing defendant Eyers watched as flooding waters gallons of waters rushed in to the prison cell over night.

172) Without a care defendant Fultz watched as flooding water rushed into the prison cell of the plaintiff on more than one night without giving a warning.

173) Without a warning defendant Holdren watched as flooding waters rushed into the prison cells of inmates while they slept unaware of what was happening.

174) Defendants Narehood and Kachik, without a care watched as flooding waters poored into the cells of numerous inmates over night causing damage to property and possible injury to those climbing out of bunk beds.



175) Without care of the Plaintiff or his cellmate, defendant McClellan kicked food garbage into the prison cell of the plaintiff damaging personal property.

176) Defendants have allowed for a culture to prevail at Rockview to treat Rockview like a garbage dump when staff comes to work, there is no care for the actual upkeep of the prison, because there is no value of life for the inmates in the minds of the defendants.

WHEREFORE, because of these facts, the Plaintiff asks this Court to rulein his favor, against the defendants.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court:

1) Issue a Declaratory Judgement pursuant to 28 U.S.C. §§2201 and 2202 and the Federal rules of Civil procedure stating that the policies, acts, and ommissions complained of herein violated the Plaintiff's rights to Due processand to not be retaliated against, and that the Plaintiff was subjected to Cruel and Unusual Punishment in violation of clearly established Law.

2) Retain jurisdiction over the defendants and their agents until such time as the Court is satisfied that their unlawful practices and acts no longer exist;

3) Award Plaintiff reasonable attorney's fees, punitive and compensatory damages, and such other relief that this Court deems proper and just;

I swear that under the penalties of perjury that the foregoing is true and correct and based upon based upon my personal knowledge and/or belief.

date: 5-26-2021

By: 
Jamil Cooper #EZ-3208
            Box A
Bellefonte, PA 16823

(25)

CERTIFICATE OF SERVICE

I hereby certify that on the date below i have caused to be served upon the party named below a copy of the "Plaintiff's Amended Complaint", by way of first class U.S. mail and that such service satisifies the fed. R. Civ P.

Daniel J. Gallagher

Office of the Attorney General

15th Floor

harrisburg, Pa 17050

date: _5-26-2021_

By; _Jsmil Cooper #EZ-3208_
SCI-Rockview
Box A
Bellefonte,PA 16823