**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIL COOPER,** | : | |
| **Plaintiff** | : | **No. 1:20-cv-02430** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNIT MANAGER MILLER, <u>et al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

On December 29, 2020, <u>pro se</u> Plaintiff Jamil Cooper ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Rockview ("SCI Rockview") in Bellefonte, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against several employees of the Pennsylvania Department of Corrections ("DOC"). (Doc. No. 1.) This matter is proceeding upon Plaintiff's amended complaint. (Doc. No. 29.) Presently before the Court are Defendants' motions to dismiss (Doc. Nos. 36, 56) Plaintiff's amended complaint, as well as Plaintiff's motion to compel (Doc. No. 48) and Defendants' motion to stay discovery (Doc. No. 57).

## I. BACKGROUND

In his amended complaint, Plaintiff alleges that he "has been subjected to gross inhumane and substandard prison conditions not consistent with his sentence and was the victim of retaliation." (Doc. No. 29 ¶ 4.) According to Plaintiff, SCI Rockview is "in need of drastic measure to maintain the upkeep of its buildings to ensure the safety of its prisoner population from [severe] injury, sickness from disease[,] or death." (<u>Id.</u> ¶ 74.) Plaintiff states that he has provided notice to the administration about several health violations. (<u>Id.</u> ¶ 76.)

For example, Plaintiff avers that he submitted grievance #855986, in which he gave notice about a pigeon infestation. (<u>Id.</u> ¶ 77.) Plaintiff claims that the pigeons leave spit and

feces on the walls, and that staff members have denied inmates access to cleaning supplies, leaving them in danger of contracting disease.  (Id.)  Plaintiff also references fire safety violations, stating that there are no lighted fire exit signs and that there are wooden stairways, along with an inoperable fire suppression system and lack of proper ventilation.  (Id. ¶ 78.) Plaintiff alleges that he has been defecated on by pigeons on several occasions, causing potential exposure to avian disease.  (Id. ¶ 84.)

Plaintiff also raises concerns regarding conditions in the Restricted Housing Unit ("RHU").  Plaintiff states that the RHU consists of the "lower three levels on the backside of D-block."  (Id. ¶ 80.)  He avers that when staff use OC spray against an RHU inmate, "the inmates of D-block in population are unaware of what [has] taken place and they become victims of the spray[,] some locked [their] cells [asleep] and awake to a gas chamber like circumstance."  (Id. ¶ 81.)  Plaintiff also claims that when an RHU inmate sets fire to his mattress, the smog goes into the cells of other inmates on D-block, and they cannot breathe because of the inactive fire suppression system.  (Id. ¶ 82.)  Plaintiff also claims that there is "no existing sprinkler system on D-block or exit plain in case of fire."  (Id.)  Plaintiff further alleges that inmates in the RHU make noise all night long, causing "the prison population of D-block unrest."  (Id. ¶ 83.)

Plaintiff claims that on December 3, 2018, he woke up to find that his cell had been flooded with water, causing damage to books, correspondence with his lawyers, and documents related to other civil actions he had filed.  (Id. ¶ 86.)  Plaintiff filed grievance #775488, requesting the preservation of video and the identification of the source of the flood.  (Id. ¶ 87.) He notified counselor William Serifini that a copy of the DOC's fiscal administration policy, which Plaintiff had received from the library, was damaged, and asked that Serifini notify the library so that Plaintiff would not be charged with the damage.  (Id. ¶ 88.)  Several days later,

Plaintiff had an interview with Defendant Miller, who asked Plaintiff "to produce some damaged items from the flood." (Id. ¶ 89.) According to Plaintiff, when Defendant Miller saw pages sticking together, he told Plaintiff "that even though some of the words . . . on the pages are smeared or sticking together [you're] fine." (Id.) Defendant Miller offered to reimburse Plaintiff with copies of the prison policies that were destroyed only if Plaintiff agreed to withdraw his grievance. (Id. ¶ 90.) Plaintiff refused, and Defendant Miller terminated the interview, refusing to reimburse Plaintiff for any damage. (Id. ¶ 91.) Plaintiff appealed the denial of administrative relief to Defendant Garman. (Id. ¶ 93.) Eventually, grievance coordinator Nicki Paul gave Plaintiff copies of the prison policies that were destroyed and asked Plaintiff if he was willing to withdraw his grievance, which Plaintiff refused to do. (Id.) Plaintiff avers that Defendant Kachik, Fultz, and Narehood worked on D-block on the evening of December 3, 2018, and "watched as water[] entered into various inmate cells" without notifying the inmates of the potential harm. (Id. ¶ 94.)

Plaintiff alleges that his cell flooded again on January 23, 2019. (Id. ¶ 96.) He noticed that the water came from outside of his cell and asked a corrections officer if maintenance would be taking care of it. (Id.) The officer told Plaintiff that maintenance was aware and "kept walking by, giving no notification to any of the sleeping inmates to pick up their property off of the floors." (Id. ¶ 97.) Plaintiff and other inmates asked for squeegees to clean, and Defendant Watson denied that request. (Id. ¶ 98.) Plaintiff and other inmates used the squeegees from the showers, along with a mop and bucket, to clean the water. (Id. ¶¶ 98-99.) Plaintiff later learned that the flood started from a vent in cell #416, "some twenty-five feet away from [his] cell." (Id. ¶¶ 100-01.) Plaintiff claims that the water destroyed several items, including towels, rugs, footwear, books, and various documents related to legal matters. (Id. ¶ 103.) Plaintiff filed

grievance #784957 to request the preservation of video.  (Id. ¶ 104.)  He avers that flood waters also come through the roof of D-block into the common areas, and that when leaks happen, trash cans and buckets are used to catch the water.  (Id. ¶¶ 106-07.)  Plaintiff claims that Defendants Kuhn and Miller are aware of the leaks because they occur right in front of the unit manager's office.  (Id. ¶ 107.)  He avers that Defendants Holdren, Eyer, and Fultz were on duty on D-block during the night on January 23, 2019, and did nothing when water started flooding into inmates' cells.  (Id. ¶¶ 62, 68, 70.)

On November 20, 2019, SCI Rockview was on lockdown.  (Id. ¶ 108.)  Plaintiff avers that there were "several piles of food garbage . . . up and down 4 range," including "macaroni food garbage" in front of his cell.  (Id.)  He alleges that Defendant McClellan[1] kicked the food garbage into his cell, causing it to get all over Plaintiff's property.  (Id. ¶¶ 110-11.)  Plaintiff filed grievance #836903 about this issue.  (Id. ¶ 112.)  He also asserted "various housing maintenance problems . . ., including showers not being regularly cleaned, floors not being regularly swept and mopped, and the lack of access to cleaning supplies."  (Id.)  Plaintiff avers that he experienced various complications while trying to exhaust this grievance.  (Id. ¶¶ 113-17.)

At some point after filing grievance #836903, Plaintiff was approached by Defendant Newpher.  (Id. ¶ 118.)  Defendant Newpher told Plaintiff that he had seen the video of the incident with Defendant McClellan and said that he could see why Plaintiff would be mad, but then asked, "don't you think it's time to leave this thing alone?"  (Id.)  Plaintiff immediately walked away without responding.  (Id. ¶ 119.)

---

[1] Plaintiff initially named C.O. McQuellen as a Defendant.  However, Plaintiff's amended complaint and Defendants' filings indicate that the proper spelling is McClellan.  The Court, therefore, will direct the Clerk of Court to amend the docket to reflect the proper spelling of Defendant McClellan's name.

Subsequently, on February 20, 2020, Plaintiff "offered several commissary purchased items to another inmate for trade purposes." (Id. ¶ 120.)  Plaintiff was outside of the inmate's cell and then "realiz[ed] that a deal could not be accomplished between the two." (Id. ¶ 121.)  As Plaintiff was walking away with a net bag full of his items, Defendants McClellan and Newpher approached, and Defendant Newpher "snatched" the bag from Plaintiff.  (Id. ¶ 122.)  Defendant McClellan escorted Plaintiff back to his cell.  (Id.)  Plaintiff told Defendant McClellan that he had a receipt for all of the items, and Defendant McClellan responded, "so what." (Id. ¶ 123.)  That night, Plaintiff received misconduct #D428421, stating that he had entered another inmate's cell, coming out with a bag of commissary.  (Id. ¶ 124.)  Plaintiff was charged with being present in an unauthorized area, as well as loaning and borrowing.  (Id. ¶ 125.)  He appeared before Defendant Miller for an informal misconduct hearing on February 26, 2020.  (Id. ¶ 126.) Plaintiff asked Defendant Miller about his confiscated items, and Defendant Miller responded that there were no soaps or bags of coffee in his office.  (Id. ¶ 127.)  Plaintiff avers that he was sanctioned with fourteen (14) days' cell restriction "without even being asked for a version of what happened." (Id. ¶ 128.)  Instead, he was asked only "if he want[ed] to go through the informal hearing or if he wanted to go to the hearing examiner." (Id.)

Plaintiff claims further that while he was eating in the dining hall, he "abruptly got up from the table" because another inmate "was sitting ther[e] bleeding from several open sores on his face and head." (Id. ¶ 129.)  Plaintiff filed grievance #801019, and it was rejected by the grievance coordinator, who stated that Plaintiff "failed to indicate that he was personally affected by the Department or facility." (Id. ¶ 130.)  Plaintiff appealed to "no avail" because he lived in the same housing area as the other inmate, sharing the same common space and using the same telephones.  (Id. ¶ 131.)  Plaintiff claims that the other inmate walked around "with open cherry

read flesh wounds on his face and head" for ten (10) months.  (Id.)  He avers that the matter was never investigated despite providing notification about "a [man] walking around in prison with open bleeding sores."  (Id. ¶ 135.)

Finally, Plaintiff takes issue with "numerous sanitation violations in the inmate dining hall."  (Id. ¶ 136.)  He claims that the ceiling leaks, and water runs down the walls and splashes "onto the tables and food trays while inmates try to eat."  (Id. ¶ 137.)  Plaintiff avers that inmates with serious mental health and excessive hygiene problems are permitted to serve food and drinks.  (Id. ¶ 138.)  Plaintiff filed grievance #798305 but did not get relief.  (Id. ¶ 139.)  He claims that, to this day, "there are puddles on the floor and inmates are cautioned by repurposed trash cans and wet floor signs to prevent accidents[,] but people fall anyway."  (Id.)  He claims that the hot boxes, steam tables, and combination ovens are "broken, inoperable[,] and vermin-infested, and inmates receive cold food."  (Id. ¶ 141.)  Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights, as well as a state tort negligence claim.  (Id. ¶¶ 143-76.)  He seeks declaratory and injunctive relief, as well as damages.  (Id. at 25.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must

take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not

entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual

allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation

marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223,

230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of <u>pro se</u> prisoner litigation, the court must be mindful that a document filed <u>pro se</u> is "to be liberally construed."  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A <u>pro se</u> complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

**B.     Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  <u>See</u> 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>Id.</u>  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."  <u>See</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>See</u> <u>Harvey v. Plains Twp. Police Dep't</u>, 421 F.3d 185, 189 (3d Cir. 2005) (quoting <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

III.     **DISCUSSION**

A.     **Plaintiff's Amended Complaint**

Defendants assert that the Court should dismiss Plaintiff's amended complaint because: (1) it violates Rules 8 and 20 of the Federal Rules of Civil Procedure; (2) Plaintiff fails to allege facts demonstrating personal responsibility; (3) Plaintiff's property loss claim is not a constitutional claim; and (4) Plaintiff's Eighth Amendment claim should be dismissed because "the allegations demonstrate neither deliberate indifference nor constitutional harm." (Doc. No. 37 at 3.) The Court considers each argument below.

1.     **Rule 8**

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain, <u>inter</u> <u>alia</u>, "a short and plan statement of the claim showing that the pleader is entitled to relief," and averments that are "simple, concise, and direct." <u>See</u> Fed. R. Civ. P. 8(a)(2), (d)(1). Taken together, Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." <u>See</u> <u>In re Westinghouse Sec. Litig.</u>, 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). The complaint "must not be 'so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by'" Rule 8. <u>See</u> <u>Umland v. PLANCO Fin. Servs., Inc.</u>, 542 F.3d 59, 64 (3d Cir. 2008) (quoting <u>Phillips</u>, 515 F.3d at 233). Dismissal pursuant to Rule 8, however, is generally reserved for situations where the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>See</u> <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).

Defendants maintain that Plaintiff's amended complaint violates Rule 8 because he "<u>finally</u> gets around to telling us what this case is about at paragraph <u>eighty-six</u>." (Doc. No. 37 at 5-6.) Defendants aver that Plaintiff's amended complaint takes issue only with two water

leaks and property damage, and that these incidents "apparently gave license to this inmate to air all his unhappiness with prison, a situation for which he has no one to blame but himself." (Id. at 6.)  Defendants assert that the majority of the amended complaint, which is twenty-six (26) pages long with 176 paragraphs, "has nothing to do with this minor property damage claim." (Id.)

The Court disagrees with Defendants that Plaintiff's amended complaint violates Rule 8. The amended complaint is not "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." See Simmons, 49 F.3d at 86.  Defendants are incorrect that Plaintiff's amended complaint takes issue only with two water leaks and property damage.  Rather, the amended complaint asserts numerous conditions of confinement that allegedly violate the Eighth Amendment, and maintains that Plaintiff was retaliated against for filing grievances about those conditions.  Plaintiff's amended complaint is not so difficult to follow that it is impossible to identify what his claims for relief are.  See Folk v. Bureau of Prisons, --- F. App'x ----, 2021 WL 3521143, at *3 (3d Cir. Aug. 11, 2021) (concluding that the dismissal of the inmate-plaintiff's 247-page second amended complaint pursuant to Rule 8 was proper because it "span[ned] seven years of encounters with dozens of people, [was] dense, very difficult to follow, and lack[ed] any consistent structure").  The Court, therefore, declines to grant Defendants' motion to dismiss on the basis that Plaintiff's amended complaint violates the provisions of Rule 8 set forth above.

## 2.      Rule 20

Defendants next assert that Plaintiff's amended complaint should be dismissed for failing to comply with Rule 20 of the Federal Rules of Civil Procedure.  (Doc. No. 37 at 6-7.)  Pursuant to Rule 20, a plaintiff may join multiple defendants in a single case if "(1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the

same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action."  See Fed. R. Civ. P. 20(a)(2).  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)).  Claims "only need to share a single question of law or fact to meet this 'very low threshold.'"  See Price v. New Castle Police Dep't, No. 2:20-cv-1274-RJC, 2021 WL 322228, at *4 (W.D. Pa. Feb. 1, 2021) (quotations omitted).

Defendants maintain that "the generalized prison conditions, such as [Plaintiff's] extraordinary fear of pigeons, do not relate in any fashion to the water leaks that are the gravamen" of the amended complaint.  (Doc. No. 37 at 6-7.)  They assert that Plaintiff's "complaints about poor hygiene, mental health issues and spitting on walls by other inmates should not be joined with this claim about property damage and unrelated pigeon fear."  (Id. at 7.)  As an initial matter, nowhere in Plaintiff's amended complaint does he assert an "extraordinary fear of pigeons."  Rather, Plaintiff references the pigeon infestation as one of the many conditions with which he takes issue.  Upon review of Plaintiff's amended complaint, the Court concludes that it does not violate Rule 20.  Plaintiff has asserted his Eighth Amendment conditions of confinement claim against all the named Defendants, therefore satisfying Rule 20's requirements, set forth supra.  Thus, after satisfying Rule 20, Plaintiff may assert as many claims as he has "against one or more Defendants, even if those additional claims are unrelated to the common claim linking all Defendants."  See Rainey v. Link, No. 3:20-cv-58, 2021 WL 666968, at *3 (M.D. Pa. Feb. 19, 2021).  Furthermore, even if the Court were to conclude that the amended complaint violates Rule 20, that is not "an independent basis to dismiss a complaint."

See Folk, 2021 WL 3521143, at *3 n.1 (citing Fed. R. Civ. P. 21).  The Court, therefore, declines

to grant Defendants' motion to dismiss on this basis.

### 3.   Personal Responsibility

#### a.   Supervisory Liability

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege

that the defendant was personally involved in the act or acts that the plaintiff claims violated his

rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Solan v. Ranck,

326 F. App'x 97, 100 (3d Cir. 2009).  Supervisors "may not be held liable for the

unconstitutional conduct of their subordinates under a theory of respondeat superior."  See Iqbal,

556 U.S. at 676.  The Third Circuit has noted that there are two theories of supervisory liability

applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under

§ 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them,

or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations";

and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with

deliberate indifference to the consequences, established and maintained a policy, practice[,] or

custom which directly caused [the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne

Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of

liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk

of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3)

the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."

See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v.

Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Defendants Wetzel, Garman, McMahon, Houser, Miller, T. Miller, Sampsel, Breese, Haldemann,[2] Watson, Weaver, and Kuhn assert that Plaintiff has failed to set forth plausible supervisory liability claims against them.  (Doc. No. 37 at 7-10.)  Plaintiff alleges that Defendant Wetzel has created "loopholes" for his employees and has "grey areas in his policies" that provide no protection for inmates.  (Doc. No. 29 ¶ 8.)  He asserts that Defendant Garman "establishes his own policies[,] rules[,] and customs that do not comply with clearly established law because it is more convenient for his own staff."  (Id. ¶ 12.)  The Court agrees with Defendants that the amended complaint fails to set forth plausible supervisory liability claims against Defendants Wetzel and Garman.  The amended complaint is devoid of allegations that Defendants Wetzel and Garman had knowledge of and acquiesced in any alleged constitutional violations by their subordinates.  See A.M., 372 F.3d at 586.  Moreover, although Plaintiff vaguely references policies and customs established by Defendants Wetzel and Garman, he fails to identify such policies.  See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's § 1983 claims against Defendants Wetzel and Garman.

The Court's review of the amended complaint, however, leads to a conclusion that Plaintiff has set forth plausible claims against Defendants McMahon, Houser, Miller, T. Miller, Sampsel, Breese, Haldemann, Watson, Weaver, and Kuhn.  A liberal reading of the amended complaint suggests that these individuals were personally involved in the alleged constitutional violations or had notice of them and failed to take action to correct them.  The Court, therefore,

---

[2] Plaintiff initially named Major Haldman as a Defendant.  Defendants' filings, however, indicate that the correct spelling is Haldemann.  The Court will direct the Clerk of Court to amend the docket to reflect the proper spelling of Defendant Haldemann's name.

declines to grant Defendants' motions to dismiss with respect to his claims against Defendants

McMahon, Houser, Miller, T. Miller, Sampsel, Breese, Haldemann, Watson, Weaver, and Kuhn.

### b.        Denial of Grievances

Plaintiff also appears to assert claims based upon the denial of his grievances and

misconduct appeals.  For example, Plaintiff avers that Defendants McMahon and Houser are

members of the Program Review Committee ("PRC"), which revies the first level of misconduct

appeals.  (Doc. No. 29 ¶¶ 20, 25.)  Plaintiff avers that the PRC "rubber stamps the decisions of

hearing examiners even if [they are] in violation of clearly established law."  (Id.)  He suggests

further that Defendant T. Miller, as a member of the PRC, "ignores his responsibility as it

pertains to appellate review of misconducts."  (Id. ¶ 30.)  Finally, Plaintiff alleges that Defendant

Brubaker,[3] as grievance coordinator, engages in the [suppression] of free speech by misfiling

grievances."  (Id. ¶¶ 52-53.)

Inmates, however, do not have a constitutional right to a grievance procedure.  See

Gerholt v. Wetzel, 858 F. App'x 32, 34 (3d Cir. 2021) (citing Massey v. Helman, 259 F.3d 641,

647 (7th Cir. 2001); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)).  Moreover, the filing of a

grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the

response to an inmate's grievance do not establish the involvement of officials and

administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F.

App'x. 216, 218 (3d Cir. 2008) (finding that "[t]he District Court properly dismissed these

defendants and any additional defendants who were sued based on their failure to take corrective

action when grievances or investigations were referred to them"); Brooks v. Beard, 167 F.

---

[3] Plaintiff initially named Grievance Coordinator Burbaker as a Defendant.  Defendants' filings,
however, indicate that the correct spelling is Brubaker.  The Court will direct the Clerk of Court
to amend the docket to reflect the proper spelling of Defendant Brubaker's name.

App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) (stating that "contentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit").  Plaintiff's claims against Defendants Brubaker, McMahon, Houser, and T. Miller regarding the handling of his grievances and misconduct appeals will, therefore, be dismissed.

### 4.    Eighth Amendment Claims

An Eighth Amendment claim includes both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  See id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  See id.  In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm."  See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015), abrogated in part on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020).  "[T]he Constitution does not mandate comfortable prisons."  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities."  See id. at 347.  Such necessities

include "adequate food, clothing, shelter, and medical care."  See Farmer, 511 U.S. at 832.

Thus, "extreme deprivations are required to make out a conditions-of-confinement claim."  See

Hudson, 503 U.S. at 9.

Defendants assert that Plaintiff's Eighth Amendment violations "are a grab bag of [his]

discontent, but [are] not an example of true [Eighth] Amendment violations."  (Doc. No. 37 at

12.)  They maintain that Plaintiff "has not alleged harm for the simple reasons he has not

suffered harm, just annoyance."  (Id.)  The Third Circuit, however, has noted that a claim may

rise to the level of an Eighth Amendment violation when an inmate alleges that he was exposed

to a "substantial risk of serious damage to [his] future health."  See Palakovic v. Wetzel, 854

F.3d 209, 225 (3d Cir. 2017) (quoting Parkell v. Danberg, 833 F.3d 313, 335 (3d Cir. 2016)).

Moreover, Defendants overlook the fact that "[s]ome conditions of confinement may establish an

Eighth Amendment violation 'in combination' when each would not do so alone, but only when

they have a mutually enforcing effect that produces the deprivation of a single, identifiable

human need."  See Wilson, 501 U.S. at 304.  Upon review of the amended complaint and the

numerous alleged conditions of confinement described therein, the Court concludes that Plaintiff

has set forth a plausible Eighth Amendment claim at this time.  Defendants' motion to dismiss,

therefore, will be dismissed with respect to this claim.

### 5.    First and Fourteenth Amendment Retaliation Claims

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of

satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a

constitutionally protected activity.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of

prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This

requirement is satisfied when the adverse action is "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See Rauser, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'"  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

In his amended complaint, Plaintiff asserts retaliation and retaliatory due process claims against Defendants Newpher, McClellan, and Miller.  (Doc. No. 29 ¶¶ 150-59.)  Plaintiff avers that Defendants Newpher and McClellan retaliated against him for filing a grievance after Defendant McClellan allegedly kicked food scraps into Plaintiff's cell by issuing Plaintiff a fictitious misconduct, which ultimately caused him to lose personal property.  He claims that

17

Defendant Miller conducted a fictitious misconduct hearing and never "conduct[ed] a hearing on the facts, just initiat[ed] punishment."  (Id. ¶ 158.)

Defendants have not addressed these claims in their motion to dismiss.  Nevertheless, it is well-established that inmates engage in protected activity when they file a grievance.  See Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011).  Moreover, the Third Circuit has recognized that "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right."  See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002).  Such a claim requires threshold proof that the inmate was engaged in constitutionally protected conduct.  See id. (citing Sandin v. Conner, 515 U.S. 472, 486 (1995)).  However, even if the discipline is initiated in retaliation for a protected act, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports.  See Smith, 293 F.3d at 653-54; see also Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012) (noting that "[d]ue process is satisfied where the plaintiff has an opportunity to confront and challenge the allegedly false misconduct reports").  Moreover, a retaliatory discipline claim fails where there is "some evidence" to support the determination.  See Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994)).  Upon review of Plaintiff's amended complaint, the Court concludes that he has set forth plausible First Amendment retaliation and Fourteenth Amendment retaliatory due process claims against Defendants Newpher, McClellan, and Miller at this time.

## 6.    Fourteenth Amendment Property Loss Claim

Defendants have construed Plaintiff's amended complaint as asserting a Fourteenth Amendment due process claim regarding the damage and loss of his property.  (Doc. No. 37 at

11-12.)  The Court agrees with Defendants that, to the extent Plaintiff asserts such a claim, he cannot maintain it because neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  See Daniels v. Williams, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process if meaningful post–deprivation remedy for loss is available).

The Third Circuit has held that the Pennsylvania DOC's grievance procedure constitutes an adequate post-deprivation remedy.  See Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008); Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).  Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  See 42 Pa. Cons. Stat. Ann. § 8522(b)(3); see also Shakur v. Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful destruction of property).  In his amended complaint, Plaintiff asserts that he availed himself of his administrative remedies but did not receive the exact relief requested.  Thus, an adequate post-deprivation remedy was available to him.  To the extent Plaintiff asserts that his grievances were mishandled or wrongfully denied, he has not alleged the denial of a federal right.  See Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009).  Likewise, if dissatisfied with the responses to his grievances, Plaintiff has a suitable remedy to pursue under the Pennsylvania Tort Claims Act.  See Hernandez v. Corr. Emergency Response Team, 771 F. App'x 143, 145 (3d Cir. 2019) (noting that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy").  The Court, therefore, will grant Defendants' motion to dismiss with respect to any

19

Fourteenth Amendment due process claims concerning the damage to and loss of property asserted by Plaintiff in his amended complaint.

### 7.    State Tort Negligence Claim

Finally, Plaintiff alleges that Defendants have demonstrated negligence by not maintaining D-block, which led to two (2) floods and the destruction of his personal property. (Doc. No. 29 ¶¶ 161-65.)  Defendants have not addressed Plaintiff's negligence claim in their motion to dismiss.  Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  See 1 Pa. Cons. Stat. Ann. § 2310.  Nine (9) exceptions to sovereign immunity have been recognized, including, inter alia, claims concerning the care, custody, or control of personal property in the possession or control of Commonwealth parties, and dangerous conditions posed by Commonwealth real estate.  See 42 Pa. Cons. Stat. Ann. § 8522(b)(3)-(4).  In light of Defendants' failure to address this claim, and upon review of Plaintiff's amended complaint, the Court concludes that Plaintiff has set forth a plausible negligence claim at this time.

### B.    Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court concludes that it would be futile to grant Plaintiff leave to file a second amended complaint with respect to: (1) Plaintiff's § 1983 claims against Defendants Wetzel and Garman; (2) Plaintiff's claims against Defendants Brubaker, McMahon, Houser, and T. Miller regarding the handling of his grievances and misconduct appeals; and (3) Plaintiff's Fourteenth Amendment due process claim regarding the loss of property. The action, therefore, will proceed as to those claims that have not been dismissed, as discussed supra.

## IV.    DISCOVERY-RELATED MOTIONS

As noted supra, Defendants have filed a motion to stay discovery (Doc. No. 57) pending resolution of their motion to dismiss. Given that the Court has ruled upon Defendants' motion to dismiss, the Court will deny as moot Defendants' motion to stay discovery. Defendants will be directed to file an answer with respect to Plaintiff's remaining claims, and the parties will be directed to complete discovery within six (6) months of the date on which Defendants file their answer.

Plaintiff has filed a second motion to compel (Doc. No. 48) addressed to Defendant Wetzel. He asserts that on May 27, 2021, he sent counsel for Defendant Wetzel a copy of his First Set of Interrogatories. (Doc. No. 51 at 1.) Plaintiff maintains that on June 30, 2021, he sent counsel a letter requesting responses. (Id.) Plaintiff indicates that, to date, Defendant Wetzel has not responded to the interrogatories. (Id. at 4.) In response, counsel for Defendant Wetzel

indicates that he did not receive the interrogatories until they were provided with Plaintiff's brief in support of his motion to compel.  (Doc. No. 54 at 2.)  Counsel states that he "has drafted responses and objections to these questions, and requests 60 days to provide them since counsel will be in trial before Judge Carlson in Cramer v. Kerestes, 3:15-cv-01360, on September 28-29, 2021, and he is actively engaged in preparation for the trial."  (Id. at 3.)  Given this fact, the Court will grant Plaintiff's motion to compel (Doc. No. 48) to the extent that Defendant Wetzel is directed to provide responses to Plaintiff's first set of interrogatories within sixty (60) days of the date of the Order accompanying this Memorandum.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Doc. Nos. 36, 56) will be granted in part and denied in part.  The motions will be granted with respect to: (1) Plaintiff's § 1983 claims against Defendants Wetzel and Garman; (2) Plaintiff's claims against Defendants Brubaker, McMahon, Houser, and T. Miller regarding the handling of his grievances and misconduct appeals; and (3) Plaintiff's Fourteenth Amendment due process claim regarding the loss of property.  The motions will be denied as to all other claims asserted by Plaintiff.  Plaintiff will not be permitted to file a second amended complaint with respect to the claims that have been dismissed.

Moreover, Defendants' motion to stay discovery (Doc. No. 57) will be denied as moot. Defendants will be directed to file answer with respect to Plaintiff's remaining claims, and the parties will be directed to complete discovery within six (6) months of the date on which Defendants file their answer.  Plaintiff's second motion to compel with respect to Defendant Wetzel (Doc. No. 48) will be granted to the extent that Defendant Wetzel is directed to provide

responses to Plaintiff's first set of interrogatories within sixty (60) days of the date of the Order accompanying this Memorandum.  An appropriate Order follows.