IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIL COOPER, | : | |
|     Plaintiff | : | No. 1:20-cv-02430 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| UNIT MANAGER MILLER, et al., | : | |
|     Defendants | : | |

# MEMORANDUM

Presently before the Court is pro se Plaintiff Jamil Cooper ("Plaintiff")'s third motion to compel addressed to Defendant Wetzel. (Doc. No. 60.) The motion is fully briefed and ripe for disposition.[1]

## I. BACKGROUND

On December 29, 2020, Plaintiff, who is currently incarcerated at the State Correctional Institution Rockview ("SCI Rockview") in Bellefonte, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against several employees of the Pennsylvania Department of Corrections ("DOC"). (Doc. No. 1.) This matter is proceeding upon Plaintiff's amended complaint. (Doc. No. 29.) In his amended complaint, Plaintiff asserts numerous violations of his First, Eighth, and Fourteenth Amendment rights, as well as a state tort negligence claim, based upon various conditions of confinement and allegations of retaliation

---

[1] Defendants have filed a motion (Doc. No. 85) to file an exhibit (Doc. No. 94) under seal to support their brief in opposition (Doc. No. 84) to Plaintiff's motion to compel. The Court finds that Defendants' motion makes the requisite showing required by In re Avandia Mktg., Sales Practices & Prods. Liability Litig., 924 F.3d 662 (3d Cir. 2019), regarding the justification for sealing court records; specifically, that the exhibit which Defendants seek to be kept under seal (Doc. No. 94) contains sensitive information that could compromise the safety and security of staff and inmates. The Court, therefore, will grant Defendants' motion (Doc. No. 85) and direct the Clerk of Court to maintain their exhibit (Doc. No. 94) under seal unless ordered otherwise by the Court.

and due process violations at SCI Rockview. (Id. ¶¶ 143-76.) In a Memorandum and Order dated November 3, 2021 (Doc. Nos. 71, 72), the Court, inter alia, granted in part and denied in part Defendants' motions to dismiss (Doc. Nos. 36, 56) and denied as moot their motion to stay discovery (Doc. No. 57). Specifically, the Court granted the motions with respect to: (1) Plaintiff's § 1983 claims against Defendants Wetzel and Garman; (2) Plaintiff's claims against Defendants Brubaker, McMahon, Houser, and T. Miller regarding the handling of his grievances and misconduct appeals; and (3) Plaintiff's Fourteenth Amendment due process claim regarding the loss of property. The Court denied the motions with respect to all other claims asserted by Plaintiff. Discovery in the above-captioned action is currently set to close on May 17, 2022.

As noted above, this matter is before the Court pursuant to Plaintiff's third motion to compel addressed to Defendant Wetzel. (Doc. No. 60.) In his motion, Plaintiff notes that on March 22, 2021, he served upon counsel for Defendant Wetzel his first request for production of documents. (Doc. No. 61 at 1.) After not receiving a response for forty (40) days, Plaintiff asked counsel to comply with the discovery requests. (Id.) Plaintiff also filed a motion to compel responses to the first request for production of documents. (Doc. No. 21.) Defendants responded that they had served responses upon Plaintiff. (Doc. No. 43.) In an Order dated August 4, 2021, the Court denied Plaintiff's motion to compel as moot to the extent he sought an Order compelling a response, and denied the motion without prejudice to Plaintiff's right to challenge the individual responses in a new motion to compel. (Doc. No. 52.) In the instant motion to compel, Plaintiff challenges several of those responses.

**II.     STANDARD OF REVIEW**

It is well-established that rulings concerning the proper scope of discovery and the extent to which discovery may be compelled are within the Court's discretion. See Wisniewski v.

2

Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  The Court's "decisions regarding the conduct of discovery, [including] whether to compel disclosure of [materials sought in discovery], will be disturbed only upon a showing of an abuse of discretion."  See Amfosakyi v. Frito Lay, No. 1:11-cv-651, 2011 WL 5593133, at *3 (M.D. Pa. Nov. 17, 2011) (citing Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983)).  Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  See Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1) provides for a broad scope of discovery.  As a consequence, courts often – and appropriately – liberally apply discovery rules.  See, e.g., Clements v. N.Y. Cent. Mut. Fire Ins. Co., 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing Great W. Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994)).  Nonetheless, a "valid claim[] of relevance [or] privilege" operates to restrict a court's otherwise broad discretion under Rule 26(b)(1).  See McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 192 (M.D. Pa. 2011).

### III.   DISCUSSION

#### A.   Requests for Video Footage

Plaintiff requested video for incidents that occurred on December 3, 2018 and January 23-24, 2019.[2]  (Doc. No. 61-1 at 2.)  With regard to the December 3, 2018 incident, Plaintiff admits that he initially requested video footage for December 6, 2018 instead of December 3, 2018.  (Doc. Nos. 61 at 2; 61-1 at 17-22.)  In addition, Plaintiff's exhibits indicate that video

---

[2] Plaintiff also requested video for an incident that occurred on November 20, 2019.  (Doc. No. 61-1 at 2.)  However, in his brief in support of his motion to compel, he avers that he "requested footage from three [different] dates and was only provided with one of the requests."  (Doc. No. 61 at 7.)  Plaintiff does not raise any issues related to his request for video from November 20, 2019 in his motion to compel.

footage from December 3, 2018 was not available as of April 26, 2019, the date on which a representative for Defendant Garman responded to Plaintiff's grievance appeal regarding the video footage, because "the timeframe to pull this footage had passed." (Doc. No. 61-1 at 23.) With regard to the January 23-24, 2019 incident, Plaintiff was informed that video from January 23-24, 2019 was "not maintained since the request, on its face, is unreasonable, and not consistent with the needs of this case." (Id. at 61-1 at 12.) The record before the Court establishes that the video for these two (2) dates no longer exists, and "[i]t is clear that the [C]ourt cannot compel the production of things that do not exist. Nor can the [C]ourt compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation." See Amfosakyi, 2011 WL 5593133, at *3. Accordingly, the Court will deny the motion to compel to the extent Plaintiff requests an Order directing Defendants to produce video for December 3, 2018 and January 23-24, 2019.

Plaintiff avers that because he requested the preservation of this video, the Court should grant spoliation sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure. (Doc. No. 61 at 8.) Specifically, Plaintiff requests: (1) an adverse inference charge; (2) that Defendants be denied the ability to defend against his Eighth Amendment claims related to the two (2) floods that occurred on December 3, 2018 and January 23-24, 2019; and (3) $800.00 in legal fees. (Id. at 9.) Defendants assert that Plaintiff's "delusions of grandeur must be ignored, since he is not an attorney and has no fees to be reimbursed since he is [a] pro se prison inmate." (Doc. No. 65 at 4.)

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting Mosaid

4

Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).  Rule 37(e) of the Federal Rules of Civil Procedure applies when determining whether sanctions for the spoliation for electronically stored information ("ESI"), such as the video at issue here, are appropriate. See Bistrian v. Levi, 448 F. Supp. 3d 454, 467 (E.D. Pa. 2020).  The four (4) elements of spoliation pursuant to Rule 37(e) are:

> First, the spoliating party was under a duty to preserve when the loss occurred. Second, the lost ESI was within the scope of the duty to preserve.  Third, "the information was lost because the party failed to take reasonable steps to preserve" it.  Fourth and finally, because [electronically stored information] "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere.

See id. at 465 (quoting Fed. R. Civ. P. 37(e) advisory committee's note).  If the Court finds that spoliation occurred, it must then determine the appropriate sanction.  If "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."  See Fed. R. Civ. P. 37(e)(2).  In determining whether to impose sanctions, the Court must consider the following three (3) factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

See GN Netcom, Inc. v. Plantronics, Inc., 930 F.3d 76, 82 (3d Cir. 2019) (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).

"The duty to preserve arises no later than when a lawsuit is filed but may be triggered earlier than the filing of the complaint depending on the particular circumstances."  See Bistrian, 448 F. Supp. 3d at 468.  The above-captioned action commenced on December 29, 2020, two (2)

5

years after the December 2, 2018 and January 23-24 incidents.  However, "[w]hen a party argues that spoliation occurred before the complaint was filed, the [C]ourt must conduct a fact-sensitive inquiry to determine at what point the spoliating party reasonably should have anticipated the litigation."  See id.  However, "[a]n inmate cannot trigger the duty to preserve simply by requesting jail officials preserve a piece of evidence."  See Tejada v. Delbalso, No. 3:18-cv-1096, 2021 WL 2457747, at *4 (M.D. Pa. June 16, 2021) (quoting Laughlin v. Stuart, No. 19-cv-2547, 2020 WL 4747665, at *2 (D. Minn. Aug. 17, 2020)).  Rather, "Rule 37(e) requires the preserving party to maintain only relevant evidence, as viewed from that party's perspective."  See Laughlin, 2020 WL 4747665, at *2.

With respect to the December 3, 2018 incident, the record reflects that Plaintiff initially asked for video footage for December 6, 2018.  (Doc. No. 61-1 at 17-18.)  He did not correct that request until December 28, 2018.  (Doc. No. 20.)  On that date, therefore, Defendants could have reasonably anticipated litigation concerning the flood that occurred on December 3, 2018.  By the time Plaintiff's request was received, however, it was too late to pull the footage.  (Id. at 23.)  Given Plaintiff's mistake in initially requesting video footage for the wrong date, the Court cannot conclude that Defendants acted with the intent to deprive Plaintiff of that information such that an adverse inference instruction or monetary sanctions would be warranted.  See Fed. R. Civ. P. 37(e)(2).

Plaintiff requested video footage for January 23-24, 2019 when he submitted a grievance about the flooding and the conditions it caused on February 1, 2019.  (Doc. No. 61-1 at 25.)  In that grievance, Plaintiff specifically stated that he would "seek civil damages."  (Id. at 26.)  On that date, therefore, Defendants could have reasonably anticipated litigation concerning the flood that occurred on January 23-24, 2019.  According to Defendants, that video was not maintained

because it was "not consistent with the needs of the case." (Doc. No. 61-1 at 12.) In support of that assertion, Defendant Sampsel has provided a declaration under seal. (Doc. No. 94.) Essentially, Defendant Sampsel avers that the cameras located on the housing unit would not have captured the flood because the vent from which Plaintiff alleges the water came is located at the back of the cell. (Id.) Thus, any video footage from January 23-24, 2019 "could not have conceivably been probative" of Plaintiff's allegations regarding the flooding that destroyed his property. See Tejada, 2021 WL 2457747, at *4. Given this explanation, the Court cannot conclude that Defendants acted in bad faith and intentionally destroyed the video such that an adverse inference instruction or monetary sanctions would be warranted. See Fed. R. Civ. P. 37(e)(2); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) (noting that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for"). The Court, therefore, will deny Plaintiff's motion to compel to the extent he seeks spoliation sanctions pursuant to Rule 37(e).

**B.  Requests for DC-121 "Extraordinary Occurrence Forms"**

Plaintiff also requested copies of any DC-121 "Extraordinary Occurrence Forms" related to grievances #784957, 775488, and 798305. (Doc. No. 61-1 at 3.) He asserts that Defendants have provided no response regarding these documents. (Doc. No. 61 at 10.) In response, Defendants assert that, "[u]nbelievably, [Plaintiff] attaches his document where he was told that no DC-121 was filed." (Doc. No. 65 at 5.) As an initial matter, none of the exhibits attached to Plaintiff's brief in support of his motion to compel indicate that no DC-121 forms were filed. However, Defendants' response to Plaintiff's first motion to compel included a copy of their responses to the requests for production at issue. (Doc. No. 43-1.) In those responses,

Defendants indicated that "[n]o such documents were filed regarding the subject matter of these grievances." (Id. at 4.) As noted supra, the Court "cannot compel the production of things that do not exist." See Amfosakyi, 2011 WL 5593133, at *3. The Court, therefore, will deny Plaintiff's motion to compel with respect to these requests.

### C. Requests for Maintenance Orders

Plaintiff also requested maintenance orders for: (1) leaks in the roof of D-Block from 2018 through 2020; (2) leaks in the roofs of the inmate dining halls; and (3) repairing the roof of the Treatment Building in 2019. (Doc. No. 61-1 at 3.) Plaintiff avers that Defendants gave him a "600 page document dump designed to obscure the relevant material needed in this case." (Doc. No. 61 at 10.) He avers that they provided only maintenance orders regarding D-Block for 2015 through 2020. (Id. at 3.) Plaintiff argues that he has "limited capabilities to interpret and inspect properly the documents provided." (Id. at 11.) He requests sanctions as well as a Court order directing supplemental production of responsive documents. (Id.)

As an initial matter, Plaintiff's own exhibits indicate that there were no work orders or maintenance requests with respect to the Treatment Building in 2019. (Doc. No. 61-1 at 12-13.) The Court, therefore, will deny the motion to compel with respect to this request because it "cannot compel the production of things that do not exist." See Amfosakyi, 2011 WL 5593133, at *3. Furthermore, the record reflects that Defendants did provide Plaintiff a document containing all maintenance orders for D-Block for 2015 through 2020.[3] (Doc. No. 43-1.) Plaintiff's motion to compel will, therefore, be denied as to this request. Moreover, the Court

---

[3] Plaintiff does not deny that he received this information; rather, he takes issue with the format in which it was provided. (Doc. No. 61 at 10-11.) While the Court agrees that the way in which this information has been provided to Plaintiff is not exactly a model of clarity, the Court has deduced that every three (3) pages of the table provided to Plaintiff (Doc. No. 43-1 at 9-570) are intended to be read together if laid out next to each other horizontally from left to right.

will deny Plaintiff's request for sanctions because there is no evidence before the Court demonstrating that Defendants acted in bad faith such that the imposition of sanctions would be warranted.  See In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 97 n.3 (3d Cir. 2008). Defendants, however, have not addressed their failure to provide Plaintiff with copies of the maintenance orders relating to fixing leaks in the roofs of the inmate dining halls, and the Court concludes that such information is relevant to Plaintiff's Eighth Amendment claims concerning conditions of confinement at SCI Rockview.  The Court, therefore, will grant Plaintiff's motion to compel with respect to this request.

### D. Requests for Employment Records

Finally, Plaintiff requested that Defendants produce the employment records for Defendants Breese and Sampsel.  (Doc. No. 61-1 at 2-3.)  In his reply brief, Plaintiff notes that these records "were not provided even though opposing counsel projects the appearance that he has made a good faith effort in [supplying] the documents."  (Doc. No. 74 at 4.)  Defendants failed to address these requests in their letter to Plaintiff addressing his other discovery requests.  (Id. at 12-13.)  The Court notes that "releasing personnel files of employees who are in daily contact with prisoners is a potential security threat."  See Travillion v. Allegheny Cty. Bureau of Corr., No. 07-928, 2009 WL 1457720, at *1 (W.D. Pa. May 22, 2009); see also Brandon v. Beard, 140 F.R.D. 328, 329 (M.D. Pa. 1991) (noting that an inmate-plaintiff did not seek personnel information "that may jeopardize the defendants' safety").  Plaintiff has not described, and the Court cannot discern, how these employment records are relevant to the claims remaining in the above-captioned action.  Moreover, Plaintiff has not described what specific information he seeks to obtain from these records.  Accordingly, the Court will deny the motion to compel with respect to these records.  The denial of the motion with respect to this request,

however, will be without prejudice to Plaintiff's right to file a renewed motion to compel addressing these requests should he desire to do so.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's third motion to compel (Doc. No. 60) will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's request that Defendants produce copies of the maintenance orders related to fixing leaks in the roofs of the inmate dining halls at SCI Rockview, and Defendants will be directed to produce relevant documents addressing this request to Plaintiff within thirty (30) days. The motion will be denied without prejudice with respect to Plaintiff's requests for the employment records for Defendants Breese and Sampsel, and Plaintiff may file a renewed motion to compel addressing these requests should he desire to do so. The motion will be denied with respect to all other requests. An appropriate Order follows.