IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIL COOPER,<br>       Plaintiff<br><br>     v.<br><br>UNIT MANAGER MILLER, et al.,<br>       Defendants | :<br>:<br>:<br>:    No. 1:20-cv-2430<br>:<br>:    (Judge Kane)<br>:<br>:<br>: |

## MEMORANDUM

Presently before the Court is pro se Plaintiff Jamil Cooper ("Plaintiff")'s motion for reconsideration of the Court's December 7, 2021 Memorandum and Order (Doc. Nos. 96, 97), which granted Defendants' motion to file documents under seal (Doc. No. 85) and denied, in part, Plaintiff's third motion to compel discovery from Defendant Wetzel (Doc. No. 60). (Doc. No. 101.) The motion, which has been briefed by the parties, is ripe for the Court's disposition. For the reasons set forth below, the Court will deny Plaintiff's motion.

**I.   BACKGROUND**

On December 29, 2020, Plaintiff, who is currently incarcerated at the State Correctional Institution in Bellefonte, Pennsylvania ("SCI-Rockview"), commenced this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 against a number of Defendants, including five (5) unidentified individuals. (Doc. No. 1.) In an Order dated February 8, 2021, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint upon the named Defendants. (Doc. No. 7.) All of the identified Defendants waived service on March 9, 2021. (Doc. No. 10.)

Plaintiff subsequently filed a "motion to serve additional interrogatories to Defendant John Wetzel" (Doc. No. 12) and a "motion for enlargement of time to serve complaint" (Doc. No. 13), seeking to learn the names of the unidentified Defendants and requesting a sixty (60)-

day extension of time to locate those unidentified Defendants and effectuate service of the complaint upon them. In an Order dated March 23, 2021, the Court granted both of Plaintiff's motions. (Doc. No. 14.)

On April 8, 2021, the named Defendants filed a motion to dismiss Plaintiff's complaint. (Doc. No. 15.) Plaintiff subsequently filed a motion for an extension of time to file an amended complaint to identify the remaining unnamed Defendants. (Doc. No. 19.) The Court granted Plaintiff's motion (Doc. No. 20), and on June 1, 2021, Plaintiff filed a motion to amend (Doc. No. 23), along with his proposed amended complaint (Doc. No. 23-2). On June 14, 2021, the Court granted Plaintiff's motion to amend and directed the Clerk of Court to docket Plaintiff's proposed amended complaint and exhibits as a separate docket entry in this matter. (Doc. No. 28.) In addition, the Court denied, as moot, Defendants' motion to dismiss Plaintiff's original complaint. (Id.)

Thus, Plaintiff is now proceeding on an amended complaint, wherein he asserts violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a tort negligence claim, based upon allegations of retaliation, due process violations, and the conditions of his confinement, all while incarcerated at SCI-Rockview. (Doc. No. 29 ¶¶ 143-76.) Named as Defendants are the following employees of the Pennsylvania Department of Corrections ("DOC"): Unit Manager Miller; John Wetzel; Major Haldeman; Deputy Superintendent Houser; Safety Manager Breese; Sergeant Watson; Program Manager T. Miller; Food Service Manager Weaver; Facility Maintenance Manager Sampsel; Unit Manager D.A. Kuhn; Superintendent Mark Garman; Deputy Superintendent McMahon; Grievance Coordinator Brubaker; and Corrections Officers McClellan, Newpher, Kachik, Narehood, Fultz, Holdren, and Eyer. (Id. at ¶¶ 5-71.)

In response to the amended complaint, Defendants filed motions to dismiss. (Doc. Nos. 36, 56.) By Memorandum and Order dated November 3, 2021 (Doc. Nos. 71, 72), the Court, among other things, granted in part and denied in part Defendants' motions to dismiss (Doc. Nos. 36, 56). Specifically, the Court granted Defendants' motions with respect to: (1) Plaintiff's Section 1983 claims against Defendants Wetzel and Garman; (2) Plaintiff's claims against Defendants Brubaker, McMahon, Houser, and T. Miller regarding the handling of his grievances and misconduct appeals; and (3) Plaintiff's Fourteenth Amendment due process claim regarding the loss of property. (Doc. Nos. 71, 72.) However, the Court denied Defendants' motions with respect to all other claims asserted by Plaintiff. (Id.) The Court also denied, as moot, Defendants' motion to stay discovery (Doc. No. 57). (Doc. Nos. 71, 72.)

On November 17, 2021, Defendants filed their answer (Doc. No. 77) to Plaintiff's amended complaint, establishing a close of discovery date of May 17, 2022. See (Doc. No. 72 (ordering that the parties complete discovery within six months of the date on which Defendants file their answer)). As reflected by the Court's docket, not only have the parties been engaging in discovery, but they have also engaged in extensive motions practice before this Court. Thus, on June 21, 2022, the Court, in light of the pending motions, extended the discovery deadline and directed the parties to complete discovery by September 19, 2022, and to file any dispositive motions on or before November 18, 2022. (Doc. No. 151.)

While there are several pending motions before the Court, this Memorandum only addresses Plaintiff's pending motion for reconsideration of the Court's December 7, 2021 Memorandum and Order (Doc. Nos. 96, 97), which granted Defendants' motion to file documents under seal (Doc. No. 85) and denied, in part, Plaintiff's third motion to compel discovery from Defendant Wetzel (Doc. No. 60). Plaintiff's motion for reconsideration, which

3

has been briefed by the parties, is ripe for the Court's disposition. For the reasons set forth below, the Court will deny Plaintiff's motion.

## II.  LEGAL STANDARD

A federal court has the "inherent authority" to reconsider its prior interlocutory orders, "at any point during which the litigation continue[s]," so long as the federal court retains jurisdiction over the case. See In re Energy Future Holdings Corp., 904 F.3d 298, 307 (3d Cir. 2018) (citation, internal citation, and internal quotation marks omitted); State Nat'l Ins. Co. v. County of Camden, 824 F.3d 399, 406 (3d Cir. 2016) (stating that a federal district court has the "inherent power to reconsider prior interlocutory orders[,]" but that this power relies on the court retaining jurisdiction over the case) (footnote omitted)).

A party who has moved for reconsideration must establish at least one of the following grounds: "'(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" See Energy Future Holdings Corp., 904 F.3d at 311 (alteration in original) (quoting United States ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 848-89 (3d Cir. 2014)); Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013); Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

As "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence[,]" see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), "[t]he scope of a motion for reconsideration . . . is extremely limited[,]" see Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). Thus, "[s]uch motions are not to be used as an opportunity to relitigate the case[.]" See id. (citing Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc., 602 F.3d 237, 251 (3d Cir. 2010)).

### III.     DISCUSSION

The stated basis of Plaintiff's motion for reconsideration of the Court's December 7, 2021 Memorandum and Order is "to correct a clear error of fact and to prevent manifest injustice."  (Doc. No. 101 at 1.)  In support, Plaintiff asserts the following two (2) grounds upon which he argues the Court should reconsider its Memorandum and Order: (1) Plaintiff was neither served with Defendants' motion to seal documents nor afforded the opportunity to respond to that motion before the Court issued its decision; and (2) the Court's decision relied upon the representations of Defendant Sampsel's declaration and, if Plaintiff would have had the opportunity to respond to Defendants' motion, he would have rebutted those representations. (Id.)  The Court addresses both of these arguments below.

With respect to Plaintiff's argument that he was neither served with Defendants' motion to file documents under seal nor provided with an opportunity to respond to that motion, the Court finds that Plaintiff has not established a sufficient basis for reconsideration.  In its December 7, 2021 Memorandum, the Court stated, in relevant part, as follows:

> Defendants have filed a motion (Doc. No. 85) to file an exhibit (Doc. No. 94) under seal to support their brief in opposition (Doc. No. 84) to Plaintiff's motion to compel. The Court finds that Defendants' motion makes the requisite showing required by In re Avandia Mktg., Sales Practices & Prods. Liability Litig., 924 F.3d 662 (3d Cir. 2019), regarding the justification for sealing court records; specifically, that the exhibit which Defendants seek to be kept under seal (Doc. No. 94) contains sensitive information that could compromise the safety and security of staff and inmates. The Court, therefore, will grant Defendants' motion (Doc. No. 85) and direct the Clerk of Court to maintain their exhibit (Doc. No. 94) under seal unless ordered otherwise by the Court.

(Doc. No. 96 at 1 n.1.)  Even assuming that Plaintiff did not have an opportunity to respond to Defendants' motion before the Court issued its December 7, 2021 Memorandum and Order, the Court concludes that Plaintiff has not shown that reconsideration of the Court's decision is warranted.  As reflected by Plaintiff's own briefing, he has not raised any challenge to the

Court's specific finding that Defendants' motion to seal satisfied the standard set forth by Avandia. Because Plaintiff has not done so, the Court concludes that he is not entitled to reconsideration of its decision to grant Defendants' motion to file documents under seal.

With respect to Plaintiff's remaining argument—that he was not able to rebut the representations made by Defendant Sampsel—the Court again finds that Plaintiff has not established a sufficient basis for reconsideration. Before addressing the substance of this argument, however, the Court will first recount the relevant portion of its December 7, 2021 Memorandum, which discusses Defendant Sampsel's representations. Those representations were filed under seal, and they were asserted by Defendant Sampsel in the context of Plaintiff's third motion to compel discovery from Defendant Wetzel. (Doc. No. 94 at 3.) In that motion to compel discovery, Plaintiff sought (among other things) video footage for incidents that allegedly occurred on December 3, 2018, and January 23rd through 24th of 2019. (Doc. Nos. 60, 61.) As reflected by the record, those incidents pertain to water that was allegedly present in Plaintiff's prison cell. Compare (Doc. No. 102 at 4 (containing Plaintiff's brief in support of his motion for reconsideration, wherein he refers to the water in his cell as a "flood") with (Doc. No. 113 at 3 (containing Defendants' brief in opposition, wherein they refer to it as a "leak").

That being said, the Court now turns to the relevant portions of its December 7, 2021 Memorandum, which provide as follows:

> **A. Requests for Video Footage**
>
> Plaintiff requested video for incidents that occurred on December 3, 2018 and January 23-24, 2019. (Doc. No. 61-1 at 2.) With regard to the December 3, 2018 incident, Plaintiff admits that he initially requested video footage for December 6, 2018 instead of December 3, 2018. (Doc. Nos. 61 at 2; 61-1 at 17-22.) In addition, Plaintiff's exhibits indicate that video footage from December 3, 2018 was not available as of April 26, 2019, the date on which a representative for Defendant Garman responded to Plaintiff's grievance appeal regarding the video footage, because "the timeframe to pull this footage had passed." (Doc.

> No. 61-1 at 23.)  With regard to the January 23-24, 2019 incident, Plaintiff was informed that video from January 23-24, 2019 was "not maintained since the request, on its face, is unreasonable, and not consistent with the needs of this case." (<u>Id.</u> at 61-1 at 12.)  The record before the Court establishes that the video for these two (2) dates no longer exists, and "[i]t is clear that the [C]ourt cannot compel the production of things that do not exist.  Nor can the [C]ourt compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation."  <u>See</u> <u>Amfosakyi</u>, 2011 WL 5593133, at *3.  Accordingly, the Court will deny the motion to compel to the extent Plaintiff requests an Order directing Defendants to produce video for December 3, 2018 and January 23-24, 2019.

(Doc. No. 96 at 3-4 (footnote omitted).)

In the instant motion for reconsideration, however, Plaintiff does not appear to challenge any of these findings.  Instead, he challenges the Court's denial of spoliation sanctions under Rule 37(e) of the Federal Rules of Civil Procedure based upon Defendants' failure to preserve the requested video footage.  In relevant part, the Court stated as follows in its December 7, 2021 Memorandum:

> Plaintiff avers that because he requested the preservation of this video, the Court should grant spoliation sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure. (Doc. No. 61 at 8.)  Specifically, Plaintiff requests: (1) an adverse inference charge; (2) that Defendants be denied the ability to defend against his Eighth Amendment claims related to the two (2) floods that occurred on December 3, 2018 and January 23-24, 2019; and (3) $800.00 in legal fees. (<u>Id.</u> at 9.)  Defendants assert that Plaintiff's "delusions of grandeur must be ignored, since he is not an attorney and has no fees to be reimbursed since he is [a] pro se prison inmate." (Doc. No. 65 at 4.)
> 
> "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." <u>Paramount Pictures Corp. v. Davis</u>, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting <u>Mosaid Techs., Inc. v. Samsung Elecs. Co.</u>, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).  Rule 37(e) of the Federal Rules of Civil Procedure applies when determining whether sanctions for the spoliation for electronically stored information ("ESI"), such as the video at issue here, are appropriate.  <u>See</u> <u>Bistrian v. Levi</u>, 448 F. Supp. 3d 454, 467 (E.D. Pa. 2020).  The four (4) elements of spoliation pursuant to Rule 37(e) are:
> 
> > First, the spoliating party was under a duty to preserve when the loss occurred.  Second, the lost ESI was within the scope of the duty to

7

> preserve. Third, "the information was lost because the party failed to take reasonable steps to preserve" it. Fourth and finally, because [electronically stored information] "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere.

See id. at 465 (quoting Fed. R. Civ. P. 37(e) advisory committee's note). If the Court finds that spoliation occurred, it must then determine the appropriate sanction. If "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." See Fed. R. Civ. P. 37(e)(2). In determining whether to impose sanctions, the Court must consider the following three (3) factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

See GN Netcom, Inc. v. Plantronics, Inc., 930 F.3d 76, 82 (3d Cir. 2019) (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).

"The duty to preserve arises no later than when a lawsuit is filed but may be triggered earlier than the filing of the complaint depending on the particular circumstances." See Bistrian, 448 F. Supp. 3d at 468. The above-captioned action commenced on December 29, 2020, two (2) years after the December 2, 2018 and January 23-24 incidents. However, "[w]hen a party argues that spoliation occurred before the complaint was filed, the [C]ourt must conduct a fact-sensitive inquiry to determine at what point the spoliating party reasonably should have anticipated the litigation." See id. However, "[a]n inmate cannot trigger the duty to preserve simply by requesting jail officials preserve a piece of evidence." See Tejada v. Delbalso, No. 3:18-cv-1096, 2021 WL 2457747, at *4 (M.D. Pa. June 16, 2021) (quoting Laughlin v. Stuart, No. 19-cv-2547, 2020 WL 4747665, at *2 (D. Minn. Aug. 17, 2020)). Rather, "Rule 37(e) requires the preserving party to maintain only relevant evidence, as viewed from that party's perspective." See Laughlin, 2020 WL 4747665, at *2.

With respect to the December 3, 2018 incident, the record reflects that Plaintiff initially asked for video footage for December 6, 2018. (Doc. No. 61-1 at 17-18.) He did not correct that request until December 28, 2018. (Doc. No. 20.) On that date, therefore, Defendants could have reasonably anticipated litigation concerning the flood that occurred on December 3, 2018. By the time Plaintiff's

8

> request was received, however, it was too late to pull the footage. (Id. at 23.) Given Plaintiff's mistake in initially requesting video footage for the wrong date, the Court cannot conclude that Defendants acted with the intent to deprive Plaintiff of that information such that an adverse inference instruction or monetary sanctions would be warranted. See Fed. R. Civ. P. 37(e)(2).
>
> Plaintiff requested video footage for January 23-24, 2019 when he submitted a grievance about the flooding and the conditions it caused on February 1, 2019. (Doc. No. 61-1 at 25.) In that grievance, Plaintiff specifically stated that he would "seek civil damages." (Id. at 26.) On that date, therefore, Defendants could have reasonably anticipated litigation concerning the flood that occurred on January 23-24, 2019. According to Defendants, that video was not maintained because it was "not consistent with the needs of the case." (Doc. No. 61-1 at 12.) In support of that assertion, Defendant Sampsel has provided a declaration under seal. (Doc. No. 94.) Essentially, **Defendant Sampsel avers that the cameras located on the housing unit would not have captured the flood because the vent from which Plaintiff alleges the water came is located at the back of the cell. (Id.) Thus, any video footage from January 23-24, 2019 "could not have conceivably been probative"** of Plaintiff's allegations regarding the flooding that destroyed his property. See Tejada, 2021 WL 2457747, at *4. Given this explanation, the Court cannot conclude that Defendants acted in bad faith and intentionally destroyed the video such that an adverse inference instruction or monetary sanctions would be warranted. See Fed. R. Civ. P. 37(e)(2); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) (noting that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for"). The Court, therefore, will deny Plaintiff's motion to compel to the extent he seeks spoliation sanctions pursuant to Rule 37(e).

(Doc. No. 96 at 4-7 (emphasis added).)

Plaintiff challenges the emphasized portion of the Court's opinion and argues that he did not have the opportunity to rebut this representation made by Defendant Sampsel. (Doc. No. 102 at 4; Doc. No. 132 at 2.) In support, Plaintiff claims that "Defendant Sampsel was wrong" (id.), that Defendant Sampsel's declaration "was created to mislead the [C]ourt" (id.), that Plaintiff "never asked for video of the vent leaking water" in his cell (Doc. No. 102 at 4), and that, instead, he requested video from the camera outside of his cell, which he refers to as "camera #390-391" (id. at 5). Plaintiff further argues that this video footage would have supported his

9

claims that he and other inmates were "pushing flood waters out of their cells and down the tier[.]" (Id. at 4 (arguing that this video would have also shown "staff walking through 2 to 4inch [sic] deep waters . . .").) Defendants, on the other hand, argue that there has been no change in the facts or the law regarding the Court's December 7, 2021 Memorandum and Order and, as a result, they urge the Court to deny Plaintiff's motion for reconsideration. (Doc. No. 113 at 3.)

      Having reviewed the parties' respective arguments, the Court will deny Plaintiff's motion for reconsideration as it pertains to his opportunity to rebut Defendant Sampsel's representations. With respect to Plaintiff's request for video footage of the December 3, 2018 incident, the Court reiterates its prior finding—that due to Plaintiff's own mistake in initially requesting video footage for the wrong date, "it was too late to pull the footage" once that date was corrected. See (Doc. No. 96 at 6 (containing the Court's December 7, 2021 Memorandum, which explained that Plaintiff initially requested video footage for December 6, 2018, and did not correct that request until December 28, 2018, after "it was too late to pull the footage"); Doc. No. 61-1 at 23 (containing the Facility Manager's response to Plaintiff's remanded grievance appeal, wherein he points out the incorrect date to Plaintiff and explains that the available timeframe to pull video footage from December 3, 2018, has since "passed")). Thus, the Court is unpersuaded by Plaintiff's argument that it should reconsider its denial to impose sanctions against Defendants for their failure to preserve video footage of the December 3, 2018 incident. See Bull v. United Parcel Serv., Inc., 665 F.3d 68, 79 (3d Cir. 2012) ("For the [spoliation] rule to apply . . . it must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly

accounted for." (citation, internal quotation marks, and emphasis omitted) (alteration in original)).

With respect to Plaintiff's request for video footage of the January 23-24, 2019 incident, Plaintiff argues, as noted above, that "Defendant Sampsel was wrong" because Plaintiff was not seeking video footage of the inside of his cell, but instead was seeking video footage of the outside of his cell. (Doc. No. 102 at 4.) The Court finds, however, that Plaintiff's arguments do not warrant reconsideration of the Court's December 7, 2021 Memorandum and Order. Even if Defendants misunderstood the nature or scope of Plaintiff's request for video footage of the January 23-24, 2019 incident, the Court still cannot find "that Defendants acted in bad faith" or that they "intentionally destroyed the video such that an adverse instruction or monetary sanctions would be warranted." (Doc. No. 96 at 7 (citations omitted).) In other words, Plaintiff has not made the necessary showing of bad faith on the part of Defendants.[1] Consequently, the Court is not persuaded that it should reconsider its denial to impose sanctions against Defendants for their failure to preserve the video footage of the January 23-24, 2019 incident. See Bull, 665 F.3d at 79 (stating that "a finding of bad faith is pivotal to a spoliation determination"); Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 292 (3d Cir. 2018) (stating that "a spoliation inference requires, among other things, actual suppression or withholding of evidence . . ." (citation and internal quotation marks omitted)); McMunn v. Babcock & Wilcox Power Generation Grp., Inc., 869 F.3d 246, 268 (3d Cir. 2017) (stating that a party can obtain a spoliation inference when "there is evidence that [the other] party has destroyed or altered evidence . . ." (citation omitted)).

---

[1] Plaintiff's bald and unsupported assertion that Defendant Sampsel's declaration "was created to mislead the [C]ourt" is insufficient to show that Defendants acted in bad faith when they failed to preserve the video footage of the January 23-24, 2019 incident. (Doc. No. 132 at 2.)

Accordingly, for all of these reasons, the Court finds that Plaintiff's motion for reconsideration has not shown a "need to correct a clear error of fact [or the need] to prevent manifest injustice." (Doc. No. 101 at 1.) The Court will, therefore, deny Plaintiff's motion for reconsideration of the Court's December 7, 2021 Memorandum and Order.

## IV. CONCLUSION

To conclude, the Court will deny Plaintiff's pending motion for reconsideration. (Doc. No. 101.) An appropriate Order follows.