**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIL COOPER,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-02430** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNIT MANAGER MILLER, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court are several pending motions that have been filed by Plaintiff Jamil

Cooper ("Plaintiff"), a state prisoner in the custody of the Pennsylvania Department of

Corrections ("DOC"), who is proceeding pro se and in forma pauperis. (Doc. Nos. 175, 177,

188, 189.)  In his motions and relevant filings, Plaintiff requests, inter alia, that the undersigned

recuse from the above-captioned action, that Defendants be held in contempt and default entered

against them, and that the Court issue a protective order relative to discovery.  For the reasons set

forth below, Plaintiff's motions for recusal and contempt, and Plaintiff's request for entry of

default, will be denied.  (Doc. Nos. 175, 177, 180.)  As for Plaintiff's two (2) motions seeking a

protective order, one will be held in abeyance pending status reports from the parties, and the

other will be deemed withdrawn.  (Doc. Nos. 188, 189.)

**I.    BACKGROUND**

On December 29, 2020, Plaintiff, who is currently incarcerated at State Correctional

Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), commenced this civil rights

action by filing a complaint pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  Named as Defendants

were a number of individuals, including five (5) unidentified individuals, all of whom appear to

have been employed by the DOC and to have worked at SCI Rockview during the period of time

relevant to Plaintiff's claims.  (Id.)  In addition to his complaint, Plaintiff also filed a motion for

leave to proceed in forma pauperis, as well as his prisoner trust fund account statement.  (Doc. Nos. 5, 6.)

In an Order dated February 8, 2021, the Court granted Plaintiff leave to proceed in forma pauperis, deemed his complaint filed, and directed the Clerk of Court to serve a copy of his complaint upon the identified Defendants.  (Doc. No. 7.)  All of the identified Defendants waived service on March 9, 2021, and counsel entered an appearance on their behalf.  (Doc. Nos. 9, 10.)  Shortly thereafter,  Plaintiff filed a "motion to serve additional interrogatories to Defendant John Wetzel" (Doc. No. 12) and a "motion for enlargement of time to serve complaint" (Doc. No. 13), seeking to learn the names of the unidentified Defendants and requesting a sixty (60)-day extension of time to locate those unidentified Defendants and effectuate service of the complaint upon them.  In an Order dated March 23, 2021, the Court granted both of Plaintiff's motions.  (Doc. No. 14.)

On April 8, 2021, the identified Defendants filed a motion to dismiss Plaintiff's complaint.  (Doc. No. 15.)  Plaintiff subsequently filed, however, a motion seeking an extension of time to file an amended complaint in order to name the remaining unidentified Defendants. (Doc. No. 19.)  The Court granted Plaintiff's motion (Doc. No. 20), and, on June 1, 2021, Plaintiff filed a motion to amend his complaint (Doc. No. 23), along with his proposed amended complaint (Doc. No. 23-2).  On June 14, 2021, the Court granted Plaintiff's motion and directed the Clerk of Court to docket his proposed amended complaint and exhibits as a separate docket entry in this matter.  (Doc. No. 28.)   In addition, the Court denied, as moot, Defendants' motion to dismiss Plaintiff's complaint.  (Id.)

In his amended complaint, Plaintiff named as Defendants the following individuals, all of whom, once again, appear to have been employed by the DOC and to have worked at SCI

Rockview during the period of time relevant to his claims: Unit Manager Miller; John Wetzel; Major Haldeman; Deputy Superintendent Houser; Safety Manager Breese; Sergeant Watson; Program Manager T. Miller; Food Service Manager Weaver; Facility Maintenance Manager Sampsel; Unit Manager D.A. Kuhn; Superintendent Mark Garman; Deputy Superintendent McMahon; Grievance Coordinator Brubaker; and Corrections Officers McClellan, Newpher, Kachik, Narehood, Fultz, Holdren, and Eyer. (Doc. No. 29 at ¶¶ 5–71.) Also in his amended complaint, Plaintiff asserted various challenges to the conditions of his confinement at SCI Rockview, which he claimed resulted in violations of his First, Eighth, and Fourteenth Amendment rights, as well as a tort negligence claim, based upon the conditions of his confinement and allegations concerning retaliation and due process violations. (Id. ¶¶ 143–76.) In connection with these allegations, he sought damages, as well as declaratory and injunctive relief. (Id. at 25.)

In response to the amended complaint, Defendants filed motions to dismiss. (Doc. Nos. 36, 56.) By Memorandum and Order dated November 3, 2021 (Doc. Nos. 71, 72), the Court granted in part and denied in part Defendants' motions (Doc. Nos. 36, 56). More specifically, the Court granted Defendants' motions with respect to: (1) Plaintiff's Section 1983 claims against Defendants Wetzel and Garman; (2) Plaintiff's claims against Defendants Brubaker, McMahon, Houser, and T. Miller regarding the handling of his grievances and misconduct appeals; and (3) Plaintiff's Fourteenth Amendment due process claim regarding the loss of property. (Doc. Nos. 71, 72.) The Court denied Defendants' motions, however, with respect to all other claims asserted by Plaintiff. (Id.) The Court also denied, as moot, Defendants' motion (Doc. No. 57) to stay discovery. (Doc. Nos. 71, 72.)

3

On November 17, 2021, Defendants filed their answer (Doc. No. 77) to Plaintiff's amended complaint, establishing—initially—a close of discovery date of May 17, 2022. See (Doc. No. 72 (ordering that the parties complete discovery within six months of the date on which Defendants file their answer)). However, in light of the various motions that were pending on the Court's docket at that time, the Court extended the discovery deadline on June 21, 2022, and directed the parties to complete discovery by September 19, 2022, and to file any dispositive motions on or before November 18, 2022. (Doc. No. 151.)

Among the various motions that were pending on the Court's docket at that time was Plaintiff's motion for sanctions based upon former defense counsel's purported misconduct during the course of discovery in this litigation. (Doc. Nos. 103, 110.) On September 30, 2022, the Court issued a Memorandum and Order addressing Plaintiff's motion for sanctions, as well as other motions that were pending at that time. (Doc. Nos. 161, 162.) Upon review of the relevant legal standard, the parties' respective arguments, and the underlying record, the Court granted in part and denied in part Plaintiff's motion for sanctions. (Id.) More specifically, the Court granted Plaintiff leave to file a motion to amend his amended complaint, along with a brief in support and a proposed second amended complaint, so that he could name as defendants the corrections officers who were identified during the course of discovery. (Id. at 20–21.) The Court denied, however, Plaintiff's motion to the extent that he sought attorney's fees, as he is a self-represented, non-lawyer litigant, and, thus, may not recover such fees. (Id. at 19–20.) Additionally, in light of the Court's ruling, and also recognizing that the parties would need additional time to address the preliminary issue of whether Plaintiff should be permitted leave to file a second amended complaint, the Court stayed discovery in this matter pending resolution of that issue. (Id.; Doc. No. 162 at 1.)

In accordance with the Court's September 30, 2022 Memorandum and Order, Plaintiff filed a motion for leave to file a second amended complaint, along with a brief in support and his proposed second amended complaint.  (Doc. Nos. 163, 164.)  On December 7, 2022, the Court granted Plaintiff's motion and directed the Clerk of Court to docket his proposed second amended complaint (i.e., (Doc. No. 164-1)) as a new entry on the Court's docket.  (Doc. No. 167.)  In addition, the Court directed the Clerk of Court to add the following Defendants to this case, Defendants J. Coudriet, R. Best, C. Fisher, D. Baney, B. Snyder, and M. Carper, and to terminate Defendants Kachik and Narehold as Defendants in this case.  (Id.)  The Court also directed the parties to complete discovery by March 6, 2023, and to file any dispositive motions on or before May 5, 2023.  (Id.)

Subsequently, on January 12, 2023, the Court instructed the Clerk of Court to serve a copy of the second amended complaint, notice of lawsuit and request to waive service of summons, and the waiver of service of summons on the newly named Defendants.  (Doc. No. 171.)  The Court also instructed the remaining Defendants to file a response to the second amended complaint within twenty-one (21) days.  (Id.)  Shortly thereafter, Plaintiff filed a motion for recusal.  (Doc. No. 173.)  Although that motion was deemed withdrawn for Plaintiff's failure to file a supporting brief (Doc. No. 174), Plaintiff refiled his motion on February 15, 2023, followed by a supporting brief (Doc. Nos. 175, 176).  Additionally, on March 8, 2023, Plaintiff filed a motion for contempt, accompanied by a supporting brief, as well as a request for entry of default and a declaration in support of his request for entry of default.  (Doc. Nos. 177 through 181.)  His motion for contempt and request for entry of default are based upon Defendants' failure to timely respond to his second amended complaint.  See (id.).

Subsequently, on April 12, 2023, Defendants filed a collective answer to Plaintiff's second amended complaint, along with responses to his motion for contempt and request for entry of default. (Doc. Nos. 183 through 185.) Plaintiff then filed a motion seeking an extension of time to file a reply brief in connection with his motion for contempt, as well as his reply brief and two (2) motions seeking protective orders. (Doc. Nos. 187 through 190.) Although unclear, it appears that Plaintiff has filed a single brief in support of his two (2) motions seeking protective orders. (Doc. No. 186.)

## II.   DISCUSSION

### A.   Plaintiff's Motion for Recusal

In his motion for recusal, Plaintiff alleges that, "[a]t [s]everal stages" of this litigation, he has "been denied justice, or the even the [sic] appearance of a even [sic] handed chance at justice by way of being able to prosecute this matter without delay and interference." (Doc. No. 176 at 2.) In particular, he alleges that "[t]here has been no checks to the behavior of opposing counsel and the Plaintiff has a real fear of his case not seeing the light of day while before this court." (Id.) Additionally, Plaintiff asserts several challenges to the Court's rulings throughout this litigation, including the Court's rulings on his motions concerning discovery and his numerous motions to compel. (Id. at 3–4.) By way of example, he asserts that the Court denied his motion to conduct oral depositions by video recorder without "giv[ing] a basis in Law or Fact[.]"[1] (Id. at 3.) By way of further example, he asserts that the Court denied "almost '20' Motions to Compel[,]" including several that the Court more recently dismissed without prejudice to him refiling them after the newly named Defendants had been served with the second amended

---

[1] The Court notes that its decision to deny his motion to conduct oral depositions reflects otherwise. (Doc. No. 140 at 4–7.)

6

complaint.  (Id. at 3–4 (arguing that Defendants had previously been ordered to file responses to

Plaintiff's motions, and that Defendants failed to do so).)[2]  Plaintiff argues that these decisions

are a result of the undersigned's "past working [for] the Commonwealth[.]"  (Id. at 4.)

 In support of his allegations, Plaintiff has submitted an affidavit, wherein he reiterates his

challenges to the Court's adverse rulings.  (Doc. No. 176-1.)  In addition, he asserts allegations

concerning former counsel for the DOC, Daniel Gallagher, and how counsel contributed to the

difficulties that Plaintiff has faced throughout this litigation.  (Id. at 3 (challenging the Court's

ruling as to his motion for sanctions that pertained to Gallagher).)  Finally, Plaintiff asserts that

in light of the Court's "last ruling (Doc# 171)" (i.e., the Court Order dismissing his motions to

compel without prejudice to him refiling them after the newly named Defendants had been

served with the second amended complaint), he is "convinced that the bias comes from [the

undersigned's] past working for and representing the interest of the Commonwealth of

Pennsylvania."  (Id. at 5.)  As a result of this alleged bias, Plaintiff contends that the undersigned

"WON'T SANCTION OR COMPEL the opposing party setting a crooked precedent."  (Id.)

 Having reviewed Plaintiff's motion, the Court turns to the relevant standard governing its

decision.  There are two (2) federal statutes that govern the recusal of federal judges: 28 U.S.C. §

144 and 28 U.S.C. § 455.  Although Plaintiff does not cite specifically to either statute, he cites

to a portion of the United States Supreme Court's decision in Liteky v. United States, 510 U.S.

---

[2]  The Court notes that, since the Court granted Plaintiff leave to file a new operative pleading
with newly named Defendants (i.e., his second amended complaint), which had to be served
upon those newly named Defendants, the Court dismissed his then-pending motions to compel,
as they were filed at the time of his prior pleading (i.e., the amended complaint).  Plaintiff's
motions to compel were, of course, dismissed without prejudice to Plaintiff refiling those
motions, if necessary, after the newly named Defendants had been served with his new operative
pleading.

540, 555 (1994), which discusses 28 U.S.C. § 455.  (Doc. No. 176 at 2.)  Thus, the Court

construes Plaintiff's motion for recusal as being filed pursuant to that statute.

28 U.S.C. § 455 provides as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

8

See id.

As the United States Court of Appeals for the Third Circuit has held, "[t]he test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned."  See In re Kensington Int'l Ltd., 368 F.3d 289, 301 (3d Cir. 2004) (citing Alexander v. Primerica Holdings, 10 F.3d 155, 164 (3d Cir. 1993)); Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir. 1987) (explaining that this objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality" (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983))).  Thus, under § 455(a), a moving party "need not show actual bias[.]"  See id. (citing Alexander, 10 F.3d at 162); see also Liteky, 510 U.S at 1154 (stating that "what matters is not the reality of bias or prejudice but its appearance").

However, unlike § 455(a), the test under § 455(b)(1) requires not just the appearance of impartiality, but a showing of actual bias.  See United States v. Sciarra, 851 F.2d 621, 635 (3d Cir. 1988) (stating that, "[a]lthough subsection (a) requires only the objective appearance of bias, subsection (b)(1) requires bias-in-fact" (citing United States v. Nobel, 696 F.2d 231, 235 (3d Cir. 1982), cert. denied, 462 U.S. 1118 (1983))); see also Liteky, 510 U.S at 550 (stating that "[t]he words connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree . . . " (emphasis omitted)).

While "extrajudicial source[s]" are the "only common basis" for establishing "disqualifying bias or prejudice," they are not the "exclusive reason a predisposition can be wrongful or inappropriate."  See id. at 551 (emphasis in original) (internal quotation marks omitted).  As a result, "judicial rulings alone almost never constitute a valid basis for a bias or

partiality motion" because "they cannot possibly show reliance upon an extrajudicial source . . . and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved."  See id. at 555.  Moreover, "opinions formed by the judge on the basis of facts . . . in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  See id.  And, finally, judicial remarks are not commonly the basis for bias or partiality, but may be "if they reveal an opinion that derives from an extrajudicial course; and will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  See id. (emphasis in original).

Here, it appears that Plaintiff seeks recusal of the undersigned because he alleges that prior employment with the Commonwealth of Pennsylvania has created a bias against him and in favor of Defendants and is now "manifest[ing]" itself in her judicial rulings.  (Doc No. 176 at 4.) The Court, having carefully reviewed Plaintiff's arguments, is unpersuaded.  As an initial matter, the Court observes that Plaintiff has neither alleged, nor shown, that the undersigned, through her prior employment with the Commonwealth of Pennsylvania, either participated as counsel, an adviser, or a material witness with respect to this litigation or expressed an opinion concerning the merits thereof.  And, notably, the undersigned's prior employment with the Commonwealth of Pennsylvania ended in 1998–long before this case was brought by Plaintiff.

In addition, the Court observes that Plaintiff's asserted basis for recusal is largely grounded in the Court's rulings that have been adverse to him.  However, the Court finds that Plaintiff has not demonstrated that those rulings have been based on "extrajudicial sources" or that they have reflected "such a high degree of favoritism or antagonism as to make fair

judgement impossible." See Liteky, 510 U.S. at 555 (explaining that judicial rulings alone almost never constitute a valid basis for bias or partiality because they do not show reliance upon an extrajudicial source and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . ").

Accordingly, Plaintiff's allegations that the Court has issued rulings against him and in favor of Defendants, without establishing the requisite "degree of favoritism or antagonism" in those rulings is, simply stated, an inadequate basis for the undersigned's recusal. See, e.g., Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 330 (3d Cir. 2015) (explaining that "adverse rulings—even if they are erroneous—are not in themselves proof of prejudice or bias" (citations omitted)); Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (emphasizing that "a party's displeasure with legal rulings does not form an adequate basis for recusal" (citation omitted)); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (stating that a "[d]isagreement with a judge's determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal").

While the Court recognizes that this case has a protracted procedural history, the Court emphasizes to Plaintiff that it holds no bias against him or in favor of Defendants, and there is no evidence to support an appearance of bias.  The Court further emphasizes to Plaintiff that it is not unsympathetic to the difficulties that he has faced or will face in this litigation as a pro se litigant.  And, finally, the Court stresses that its rulings have been based on a reasoned assessment of the facts as presented by the parties, the applicability of relevant law, and its management of this very litigious docket.  See R & C Oilfield Servs. LLC v. Am. Wind Transp.

Grp. LLC, 45 F.4th 655, 661 (3d Cir. 2022) (stating that "[c]ourts possess inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

### B.      Motion for Contempt

Next, the Court turns to Plaintiff's motion for contempt, which he has filed pursuant to Rule 70(e) of the Federal Rules of Civil Procedure. (Doc. No. 177.) In support of his motion, Plaintiff alleges that, on January 12, 2023, the Court directed the Clerk of Court to serve a copy of his second amended complaint upon the newly named Defendants. (Doc. No. 178 at 2.) Plaintiff further alleges that, on that same date, the Court directed the remaining Defendants to file a response to the second amended complaint within twenty-one (21) days. (Id.) Plaintiff argues, however, that Defendants did not file a timely response in accordance with the Court's Order. (Id.) As for relief, Plaintiff seeks "a Judgment against each defendant newly added to the [s]econd [a]mended [c]omplaint and to enter any other such Judgments against counsel as the court deems proper and just." (Id. at 4.)

In support of his motion for contempt, Plaintiff has submitted an affidavit wherein he explains that "[t]here is a [sic] urgency for the response to the [second amended complaint] because it would be based on whether or not [Defendants] admitted to the allegations asserted [therein]." (Doc. No. 179 at 2.) Plaintiff further explains that, without Defendants' response to his pleading, he cannot perform "a complete and true investigation of the facts" since there is "a hard set [sic] discovery deadline of March 6, 2023," and the newly named Defendants were served with a copy of the second amended complaint on January 12, 2023. (Id.) Plaintiff then expresses concern as to whether he would be granted a "continuance" to complete discovery in this matter. (Id.)

On April 12, 2023, counsel for the original and newly named Defendants filed a response to Plaintiff's motion to compel, along with waivers of service on behalf of the newly named Defendants, and their answer with affirmative defenses to Plaintiff's second amended complaint. (Doc. Nos. 182 through 185.)  In that response, counsel for Defendants "apologizes to Plaintiff and the Court for the mistake in not complying with [the Court's Order]."  (Doc. No. 184 at 2.) Counsel asserts, however, that the United States Court of Appeals for the Third Circuit has consistently held that sanctions may be awarded only in exceptional circumstances, and, for that reason, sanctions should be reserved for those cases in which the conduct of a party or an attorney is egregious.  (Id. at 2–3.)  In connection with this asserted standard, counsel argues that a finding of contempt or an award of sanctions is not warranted here.  (Id. at 3.)

Plaintiff, in turn, has filed a reply.[3]  (Doc. No. 190.)  For the most part, Plaintiff simply reasserts the arguments that are set forth in his motion to compel and supporting brief.  (Id. at 1–2.)  However, Plaintiff appears to supplement his request for relief as follows—that (1) the newly named Defendants should be deemed to admit the allegations in his second amended complaint, and (2) Defendants should each be sanctioned by way of a payment of $5,000.  (Id. at 2.)

As discussed above, Plaintiff seeks relief under Rule 70 of the Federal Rules of Civil Procedure.  Rule 70 is titled, "Enforcing a Judgment for a Specific Act[,]" and it provides as follows:

> **(a) Party's Failure to Act.** Ordering Another to Act. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party.

---

[3]  Plaintiff filed his reply several days after he filed a motion seeking an extension of time in which to file his reply.  (Doc. Nos. 187, 190.)  The Court will grant Plaintiff's motion seeking an extension of time and will deem his reply properly filed.

> **(b) Vesting Title.** If the real or personal property is within the district, the court—instead of ordering a conveyance—may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance.
>
> **(c) Obtaining a Writ of Attachment or Sequestration.** On application by a party entitled to performance of an act, the clerk must issue a writ of attachment or sequestration against the disobedient party's property to compel obedience.
>
> **(d) Obtaining a Writ of Execution or Assistance**. On application by a party who obtains a judgment or order for possession, the clerk must issue a writ of execution or assistance.
>
> **(e) Holding in Contempt.** The court may also hold the disobedient party in contempt.

See Fed. R. Civ. P. 70.

Of particular significance here, Rule 70 "cannot be used as the authority for contempt or sanctions where [the] defendants failed to answer on time." See McCabe v. Arave, 827 F.2d 634, 639 (9th Cir. 1987). Instead, "Rule 70 gives the district court a discrete and limited power to deal with parties who thwart final judgments by refusing to comply with orders to perform specific acts." See Analytical Eng'g, Inc. v. Baldwin Filters, Inc., 425 F.3d 443, 449 (7th Cir. 2005); see also Bryan v. Erie Cnty. Off. of Child. & Youth, 752 F.3d 316, 321 (3d Cir. 2014) (citing, inter alia, Rule 70 as setting forth "post-judgment enforcement and execution procedures"). Thus, the Court will deny Plaintiff's motion seeking relief under Rule 70, as it is based upon Defendants' failure to timely answer his second amended complaint.

That being said, the Court notes that, with regard to civil contempt, the United States Court of Appeals for the Third Circuit has explained that the "purpose . . . is primarily remedial and to benefit the complainant." See Roe v. Operation Rescue, 919 F.2d 857, 868 (3d Cir. 1990) (citations omitted). As a result, "[c]ivil contempt sanctions are designed either to compensate the injured party or to coerce the defendant into complying with the court's order." See id. (citation

14

omitted); Marshak v. Treadwell, 595 F.3d 478, 494 (3d Cir. 2009) (recognizing that "[s]anctions for civil contempt serve two purposes: to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience" (citations and internal quotation marks omitted)).

Here, Defendants have now filed, albeit in an untimely manner, an answer to Plaintiff's second amended complaint. As a result, the Court does not need to "coerce" Defendants into complying with its January 12, 2023 Order. See Roe, 919 F.2d at 868 (explaining that "[e]ven when the sanctions coerce, they are designed to aid the complainant through ensuring that the contemnor adheres to the court's order"). Additionally, although Defendants have acknowledged their failure to file a timely answer and have apologized to both Plaintiff and the Court, Plaintiff has neither alleged nor shown that he has been injured by their untimely answer. At most, Plaintiff has expressed concern as to whether he will be afforded the opportunity to complete discovery in this matter. See id. (explaining that when civil contempt fines are payable to the complainant, they are designed to compensate him for the "damages caused by the contemnor's noncompliance" (citation omitted)). Thus, the Court does not find a basis to either coerce Defendants' compliance or compensate Plaintiff for damages, and Plaintiff's motion for contempt will be denied.

However, the Court is persuaded that Plaintiff should be afforded additional time to complete discovery in this matter. While the life of this litigation is protracted, Plaintiff has been able to identify new defendants, all of whom have been named in his second amended complaint. As a result, the Court will grant Plaintiff's request for additional time to complete discovery. In doing so, the Court strongly encourages the parties to work together, without Court intervention, in order to complete discovery in an efficient and productive manner. The Court also instructs

15

counsel for Defendants, as an officer of this Court, to be mindful of Plaintiff's status as a pro se litigant, as the parties move forward with discovery.

    **C.**    **Request for Entry of Default**

The Court next turns to Plaintiff's request for entry of default.  (Doc. No. 180.)  As reflected by the Court's docket, Plaintiff filed this request shortly after he filed his motion for contempt.  Upon review of both filings, the Court notes that that they appear to be related.  <u>See</u> (Doc. Nos. 177 through 180).   More specifically, Plaintiff's request for entry of default requests that the Clerk of Court enter default against Defendants J. Couriet, R. Best, C. Fisher, D. Baney, B. Snyder, and M. Carper pursuant to Rule 55 of the Federal Rules of Civil Procedure for their failure to timely answer his second amended complaint.  (Doc. Nos. 180 at 1; 181 at 1.)

Defendants have filed a response to Plaintiff's request for entry of default, again acknowledging their untimely answer to Plaintiff's second amended complaint and again apologizing to both Plaintiff and the Court for this error.  (Doc. No. 185 at 2.)  Because, however, they have now filed their answer, albeit in an untimely manner, Defendants argue that Plaintiff's request for the entry of default should be denied.  (<u>Id.</u>)  As reflected by the Court's docket, Plaintiff has not filed a reply.

While the Court does not overlook the seriousness of Defendants' obligations in this litigation and is sympathetic to Plaintiff's frustration with Defendants' failure to timely file an answer to his second amended complaint, the Court concludes that Defendants' answer, even if untimely filed, renders his request for an entry of default moot.  The Court notes that this conclusion is consistent with the long-standing practice of the Third Circuit, which favors the resolution of disputes on the merits.  <u>See</u> <u>Hritz v. Woma Cor.</u>, 732 F.2d 1178, 1181 (3d Cir. 1984) (stating that "we have repeatedly stated our preference that cases be disposed on the merits

16

whenever practicable" (ctiations omitted)); <u>Kimerg v. Univ. of Scranton</u>, 411 F. App'x 473, 479

(3d Cir. 2010) (unpublished) (explaining that, "[b]ecause we disfavor default judgments, doubts

as to whether a defendant should be permitted to file an untimely answer should be resolved in

favor of allowing a determination on the merits" (citation omitted)); <u>Hill v. Williamsport Police

Dep't</u>, 69 F. App'x 49, 51 (3d Cir. 2003) (unpublished) (observing that "[o]ur Court does not

favor entry of defaults or default judgments . . . as it prefers adjudications on the merits"

(citation, internal citation, and internal quotation marks omitted)). This is especially true where,

as here, Plaintiff has suffered no apparent prejudice in receiving or subsequently litigating the

issues raised in Defendants' untimely answer.[4] Accordingly, Plaintiff's request for entry of

default will be denied as moot.

    **D.**    **Motions for Protective Orders**

On May 31, 2023, Plaintiff filed a brief in support of "Motion for Protective Order."

(Doc. No. 186.) Thereafter, on June 5, 2023, Plaintiff filed two (2) motions for protective orders.

(Doc. Nos. 188, 189.) Thus, although it is unclear, it appears that Plaintiff's May 31, 2023 brief

was filed in support of his motion that is docketed at Docket Number 188. Accordingly, because

Plaintiff has not filed a brief in support of his other motion for a protective order that is docketed

at Docket Number 189, and because the time period for filing a brief in support of that motion

has passed, the Court will deem that motion (Doc. No. 189) withdrawn pursuant to the Court's

Local Rules. <u>See</u> M.D Pa. L.R. 7.5.

As for Plaintiff's motion for a protective order that remains pending before the Court,

Plaintiff alleges that he is filing that motion pursuant to Rule 26(c) of the Federal Rules of Civil

Procedure. (Doc. No. 186 at 1.) Plaintiff alleges that, on May 17, 2023, he received a notice of

---

[4] As discussed above, the Court will afford Plaintiff additional time to complete discovery.

deposition from counsel for Defendants and that he immediately responded to counsel, stating that depositions had "already" been held in this case, and, thus, it would constitute a "second bite of [the] apple[.]"  (Id.)  In addition, Plaintiff contends that Defendants did not file "the appropriate (14) days Notice as is required by Law" and did not "file[ ] a motion to depose [him] with the court."  (Id.)  For relief, Plaintiff requests that the Court "forbid a second deposition of the Plaintiff as this would prejudice [him] as though he has maintained that the defendants have been resistant to [the] discovery process[,] and this is evidence of further abuse."  (Id. at 2.)

As reflected by the Court's docket, Defendants did not file a response to Plaintiff's motion for a protective order.  However, the Court recognizes that Plaintiff filed a brief in support before he filed either motion for a protective order.  Thus, in reviewing the docket, it is not readily apparent whether Plaintiff intended to file that brief in support of either motion.  The Court, recognizing Plaintiff's status as a pro se litigant who is currently incarcerated, liberally construes his May 31, 2023 brief to be filed in support of one of his subsequently filed motions.  That said, the Court acknowledges that Defendants may not have understood Plaintiff's filings to have been submitted in this manner.

Accordingly, in light of this lack of clarity that exists on the Court's docket regarding Plaintiff's filings, and the passage of time since Plaintiff filed his motion, the Court will direct the parties to each file a status report as to the current posture of depositions in this matter.  As a result, the Court will hold in abeyance Plaintiff's motion seeking a protective order.  (Doc. No. 188.)

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff's motions for recusal and contempt, and Plaintiff's request for entry of default, will be denied.  (Doc. Nos. 175, 177, 180.)  As for Plaintiff's two (2) motions seeking a protective order, one will be held in abeyance pending status reports from the parties, and the other will be deemed withdrawn.  (Doc. Nos. 188, 189.) An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania