FILED
HARRISBURG, PA

JAN 08 2025

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMIL COOPER,
      PLAINTIFF

NO:20-CV-2430

VS.

JUDGE Yvette Kane

UNIT MANGER MILLER, et al
      DEFENDANTS

Jury Trial by Demand

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY JUDGEMENT

Now Comes the Plaintiff, Jamil Cooper, prisoner of the
Pennsylvania Department of Corrections filing this Response in
Opposition to the Defendant's Motion for Summary Judgement, pro
se. Pursuant to Federal Rules of Civil Procedure rule 56 the
Plaintiff offers the following:

Summary Judgement

The history of this action concerns the inhumane living
conditions of the housing area of D-block, and that of the Inmate
Dining Hall at the State Correctional Institution Rockview. These
conditions has gone unchecked and has been allowed to fester
under the eyes of those whoes very job titles requires for them
to forbid these problems from arising. This body is called the
Safety Committee. Accoding to Departmentof Correction Policy "DOC
Policy" specifically the general safety section at 15.1.1. Safety
Procedures Manual "Safety Policy" see PL0207-0212 a committee is
suppose to be in place to review and communicate all Department

policies and procedures as they relate to Safety and
Environmental Protections on an anual basis, and most importantly
it is to improve awareness of health and safety conditions and to
maintain compliance with Accident and Illness prevention
requirements in Department Facilities.., (PL0207 at sec. A)

The Safety Committee according to DOC policy is comprised of
in part the Deputy Superintendent of Facilities Management
(DSFM)"Defendant McMahon" who will serve as the Chair person, and
Vice Chair Person is the Deputy Superintendent for Centralized
Services (DSCS) "Defendant Houser", the Correctional Facility
Maintenance Manger (FMM) "Defendant Sampsel", the Corrections
Classification Program Manager (CCPM) "Defendant T. Miller", and
the Food Service Manager (FSM) "Defendant Weaver".., including
and among other staff members the Correctional Institutional
Safety Manager (CISM) "Defendant Breese". According to DOC policy
there are to be "monthly Inspections" for Fire/Safety/Sanitation
and Hygeine and there are also weekly inspections to be held by
not only safety committee members but are also conducted by
hoousing staff see Interrogatories of Major Haldeman at (PL0065)
and  job Description of Major Haldeman (0071), Interrogatories of
David Kuhn (Pl0045), Interrogatories to Defendant Miller PL0192
at 8). After watching an  Emergency Broadcast by the Pennsylvaina
Emergency Management Agency "PEMA" and by recognizing the
numerous fire, safety, health, hygeine, and sanitation

deficientices and the fear of suffering death while incarcerated at the State Correctional institution "SCI" Rockveiw from among other the things the Covid-19 virus the Plaintiff filed greivance # 855986,043 [PL] and even before that the Plaintiff has suffered from his cell being flooded twice, see (grievance's # 775488 [PL 0220-21]; 784959 [PL 0222-23] damaging personal property and both times the flooding happened the waters came into the plaintiff's prison cell from the out side of his cell, one time corrections defendants at Rockview could not provide to the plaintiff where the waters came from, (Pl 0243 ), and the second time the flooding originated from a cell some (25) twenty five feet away from the plaintiff's cell. Defendants placed the plaintiff's health in jeopardy beause of the grosse and inhumane conditions of confinement subjecting the Plaintiff Mr. Cooper to being deficated on by pigeons on the housing area, the non access to cleaning supplies, black mold in showers, blood on floors that are never cleaned and the constant realization of being subjected to flood like atmosphere from leaks in a roof from numerous places that has never been repaired. After realizing that almost

all of these problems have been address previously in prior litigation and a consent decree was made there was no change to the hazardous living conditions at SCI Rockview.

Federal rules of civil procedure rule 56(a) requires the court to render Summary Judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

① Defendant Garman was forced bt SOIGA to fully answer Grievance 775488 See also PLO242

entitled to judgment as a matter of law". Fed. R. Civ. 56(a). A
disputed fact is material if proof of its existence or
nonexistence would affect the outcome of the case under
applicable substantive law. see Anderson vs. Liberty Lobby Inc.
477 U.S. 242, 248, 106 SC.t 2505 (1986) A issue of material fact
is genuine if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party. See Anderson at 257,
and Benner vs Local 514 Bhd. of Carpenters & Joinders of Amer.
927 F.2d 1283, 87-88 (3rd Cir. 1991).

Whether Defendants Violated the Plaintiff's 8th Amendment Right
not to be subjected to cruel and unusal punishment: Yes

§1983 Violation of Crule and Unusual Punishment against
defendant's Wetzel, Garman, Houser, McMahon, Breese, T.Miller,
Haldeman, Kuhn, McClellan, Watson, Weaver, Sampsel, N. Fultz, D.
Baney, Eyer, Snyder, Carper, Coudriet, and Fisher.

   Prison conditions that are "restrictive and even harsh are
part of the penalty that criminal offenders pay for the Penalty
for their offenses against society". see Rhodes vs. Chapman 452
U.S. 337,347, 111 SC.t 2392 (1981) Conditions do not violate the
Eighth Amendment unless they amount to "the unecessary and wanton
infliction of pain".., ID According to operating Complaint
"Complaint" (Doc #168) the Plaintiff and other inmates at
ROckview was forced to exist without the "minimal civilized
measures oflifes necessities"..., this includes hot food,
clothing, shelter, medical care, and resonable safety".., see
Helling vs. Chapman 509 U.S. 25, 32, 113 SC.t 2475 (1993) As well
as Warmth [and] exercise. see Wilson vs. Seiter 501 U.S. 294,
297, 111 SC.t 2321 (1991) " The Amendments prohibition on Cruel
and Unusual Punishment applies to both an inmates formal sentence
and deprivations that were not specificall part of the sentence,
but were suffered during imprisonment" see Walker vs. Sober 2022
U.S. Dist. LEXIS 177576 (E.D. Pa Sept. 2022) quoting Mammana vs.
Fed. Bureau of Prisons 934 F.3d 368, 372 (3rd Cir 2019) According

(4)

to the Court in  Wilson the term "Shelter" includes various
aspects of Physical conditions including, lighting, ventilation,
and Structural deterioration.

According to the complaint (Doc 168) the Plaintiff while
housed in D-block has been exposed to a deteriorating roof which
has numerous leaks in it, that  causes rain water and melting
snow to leak into the housing area and into the plaintiff's cell,
causing floods and slip and fall type accidents, in the commmon
area where inmates congregate to play cards, do homework, or
watch T.V. if the inmate is not careful. The Plaintiff has
suffered damage to real property from cell flooding from the
leaks,    the deteriorating roof causing injuries not consistant
with his prison sentence on two occasions (Doc #168 at 91-95,
101-105, 110-111). The conditions of which normally should render
a prison closed... see Inmates of Allegheny Cnty vs. Wecht. 874
F.2d 147, 153-155 (3rd Cir 1989) recognizing "Serious Physical
Deterioration of the prison.

The housing area of D-block is not sufficiently lighted so
when entering or exiting the block on a sunny day can cause a
dizzying effect. see (Doc #168 ¶80) There is a pigeon infestation
that goes ignored, and unchecked by prison staff and birds
deficate all over the housing area on walls and ledges. see
Affidavits of Craig Bryant PL0133 ¶14, Jamil Cooper PL0 246  ¶6,7)
and even on people see PL0123 at 6-9) and the "Maintenance
Department" ignors and rejects the requests of the inmates and
other prison staff to clean the bird fecal matter off of the
walls and ledges see (PL0038-0040).

Ventilation plates are covered and blocked on the housing
area to provide better airconditioning for the central air unit
used for staff offices. see (Doc 168 ¶87) Affidavit of Jamir
Harris PL0162 ¶12)

The housing area is never cleaned (Doc#168 ¶82) see Affidavit of Peter Murphy PL0122 at 3-4, Jamil Cooper PL0254 , Corey Gibbs PL0127 at 4-6, Graig Bryant PL0132 at 4-7, Dorian Daniels PL0137 2-5, Jamir Harris PL0161 5-6.

D-block is not in compliance with modern fire safety code regulations including, no sprinkler system, a fire surpressant system which is also connected to the fire alarm that is so often used as a air conditioner for corrections officers that when a real emergency happens the system is inoperable and always needs maintenance. (Doc#168 ¶83-84) Affidavit of Jamil Cooper PL0248 , Corey Gibbs PL0127 at 18-19.

the roof of the inmate dining hall is deteriorating the Plaintiff is /was compelled to eat meals in a waterfall like atmosphere on rainy days or whenever snow melts (Doc#168 ¶142) because of the numerous holes in the deteriorating roof. see affidavit of Jamil Cooper PL0254, Rashad Brisco PL0168 at 3-9. SCI-Rockview allows for inmates to walk around with bleeding open sores to sit and eat in the inmate dining hall around other inmates in the general population with undiagnosied diseases see (Doc#168 ¶134-140) Jamil Cooper PL 0254 , and Michael Bookard PL0187-88 at 7-10. Culinary staff serves food during meal line that they know is not of the proper serving temperature in violation of law serving cool foods just to get mail line (meal time over with)

One third of D-block is the Restricted Housing Unit "RHU"
and General Populatoin inmates are housed over top of the RHU.
Inmates in the RHU yell, sing, and have rap Battles making beats
by banging on tables in the cells for hours into the early
morning causing head aches and hours of lost sleep to the
Plaintiff and other prisoners housed on D-block that are not
being further punished for breaking prison rules see (Doc#168 ¶
88) The Court in Shepard vs. Ault at 982 F.Supp. at 648 citing
Reck vs. Pate 367 U.S. 433, 81 SC.t 1541 (1961) noted that "the
effectiveness of sleep deprivation as a tool of torture has long
been recognized" see also affidavit of Jamil Cooper PL 0248 ,
Peter Murphy PL0125 at 18-19, Craig Bryant PL0131 at 3, Day'mere
Wisher PL0144 at 12, Jamir Harris PL0163 at 13.

When a inmate in the RHU has set fires to mattresses and the
fire surpression system was incapable in removing the smog. you
can hear the alarm but the smog is not removed see (Doc#168 ¶87)
see interrogatories to Saftey Manager Breese PL0096 at 5). when
inmates in the RHU are being punished by way of using chemical
agents Oleresin Capsium "OC' the prisoners in the general
population side of D-block are exposed to the effects of the
spray. see (Doc#168 ¶86) see PL0163 at 20-21.

Corrections officer (Defendant McClellen) in the housing
area of D-block plays a part of the  unsanitary conditions of D-
block, and contribute to the wanton infliction of mental strain by

kicking food garbage maccaroni salad, mixed vegetables and wet
bread into the Plaintiff's cell upon Mr. Cooper's sneakers, rugs,
and towels. (Doc#168 ¶114-116) McClellen's actions are not
consistent with evolving standards of decency that mark a
maturing society. see Rhodes vs. Capman 452 U.S. 337, 346, 1010
SC.t 2393 (1981)

United States citizens sentenced to confinement as
punishment for criminal activity do not lose the protection
afforded them by the U.S. Constitution. The Eighth Amend of the
Constitution prohibits the infliction of cruel and unusual
punishments upon its citizens this prohibition applies not only
to the Federal government but also to the states in their
operation of state penitentiaries..., see Tilery vs. Owens 719 F.
Supp 1256, 1260 (W.D.PA 1989) Quoting Whitlry vs. Alberts 475
U.S. 312, 318-19, 106 SC.t 1078, 1083-1084. The above conditions
are all in violation of the Eighth Amendments band against cruel
and unusual punishment.

In consideration of the above mentioned facts the Plaintiff
requests that this court grants Summary Judgment in his favor
against all named defendants.

Whether Defendnats actions or inactions was done in violation of
the 8th Amendments prohibition against Deliberate Indiffernce:
Yes.

§1983 Violation Deliberate Indiffence against Defendants Wetzel,
Sampsel,Garman, Watson, Breese, T. Miller, McMahon, Houser, Kuhn,
Unit Manager Miller, Haldeman, Weaver, McClellan, Baney, Eyer,

Carper, Coudriet, and Fisher.

The United States Supreme Court has held that a prison official can be found reckless or deliberate if "the official knows of and disregards an excessive risk to inmate health and safety"..., see Farmer vs. Brennan 511 U.S.825, 837, 114 SC.t 1970 (1994) An official who has knowledge of a serious risk or a cruel condition must take reasonable measures to abate it. see Farmer at 847. "[P]rison Officials who was unaware of a substantial risk of harm to an inmate may neverthees be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it"..., ID at 842.

According to the Second Amended Complaint (Doc#168 at  ¶8 ) Mr. Cooper out of a concern for his Safety and overall health after watching a warning from the Pennsylvania Emergency Management Agency (PEMA) as it pertained to the emphasis on cleaning to minimize the effects of contracting Covid-19, and that corrections staff was falling short of the those instructions, Mr. Cooper filed grievance #855985[2] for the unacceptable prison conditions that he was subjected to by defendants Unit Manager Miller "Miller" and other Corrections defendants all members of the Rockview Safety Committee at Rockview. Safety Committee members are required to make Sanitary and Hygien inspections of the housing areas by Department of Corrections policy and procedure, on a daily, weekly, and monthly

2. See PL 0213-0214

(9)

basis. see (Interrogatory Responses of Miller PL0192 at 8,
Admissions of Miller PL0202 at 9). According to numerous
testimonies of inmates that were or still are housed on D-block
state how they have been deficated on by pigeons and or about how
the walls of the housing area is caked with layers of bird dung
that have gone uncleaned for years. see (Affidavit of Jamil
Cooper PL 0242, at 11 , Peter Murphy PL0123 at 5, corey Gibbs PL0128
at 12,26, Crag Bryant PL0131 at 2, Marvin Alsbrook PL0139 at 5,
all of these prisoners desire a change of their living conditions
and are willing to testify to the pain of perjury of those known
unlawfull conditions of the institution.

Miller knows of the leaking roof of D-block and has known
for years, and admits to the usage of buckets and repurposed
trashcans to collect water leaking from the deteriorating roof
that causes floods. see (Admission Responses of Miller at PL0202
at 10), and Affidavit of Jamil Cooper PL0249, at 32. Defendant Unit
Manager Miller never filed the required "Work Orders" to have the
maintenance department repair the roof of D-blook. see Defendant
(Miller's Interrogatory Responses at PL0191 at5). Inspite of the
fact that he Knows that there are leaks in the roof that there
are holes, but he does'nt know how many holes there are, and uses
buckets to collect water for the holes he does know about see
(Miller's Response to Admissions PL0202 at 10). see Affidavits of
Corey  Gibbs PL0129 at 7-9. Peter Murphy PL0123 at 5, Johnathan

Rousin PL0157 at 9, and Day'mere Wisher PL0145 at 8). Thereis a humongus hole in the front of the Unit Managers Office (see PL0145 at 8, and Affidavit of Jamil Cooper PL_____ ) which is located in the common area where prisoners walk infront of during recreation hours, also prisoners, housing officers, and administrative staff alike have to walk under the hole when entering to see Miller. Sometimes prisoners have to worry about the risk of rocks and paint chips falling from the ceiling see Affidavit of Jamir Harris PL0162 at 9. The deterioratoni of the roof had been a problem of D-block for years (see PL0127 at 2), and has existed before and after Miller was assigned as Unit Manager of D-block, inspite of the fact that Miller denies that there is a problem with the roof in his response to grievance # 775 488 , the leaks were appearant when Defendant Kuhn was the Unit Manager of D-block also, Kuhn has never filed a work Order to have roof repairs for the housing area of D-block, see Affidavit of Jamil Cooper PL 0249, at 31 .see Maintenance Work Orders of D-block PL0001-0040, see (Interrogatory response of Defendant McMahon PL0087 at 14), Kuhn however    testifies as if he placed work orders in for the repair of the roof (see PL0049)

The deteriorating roof is also a problem that all members of the Safety Committee of Rockview have to accept responsiblity for, it is undenied that they all take maintenance, safety and

hygien inspections of housing areas see PL0085 at 9, Pl0045 at 5,
and PL0065 at 9, and it is acknowledged by those members.
According to his testimony Defendant Sampsel acknowledges that
there was a need to repair the deteriorated roof of D-block, and
that there was a need a Order to replace the roof of D-block see
PL0101 at 5, however contrary to that statement, testimony from
his supervisor and head of the Safety Committee Deputy
Superintendent of Facility Management Defendant McMahon said that
there was no request or work order placed to repair the roof of
D-block.

Miller has chosen not to take efforts to provide cleaning
chemicals or even proper cleaning supplies available to properly
clean the housing area and the shower stalls, inspite of the fact

of the appearance of sticky, gummy black mold on the walls
and even on the shower curtains that are used to cover the
inmates. see Affidavits of Jamil Cooper PL 241, at 12, Edward
Boback PL0184 at 5, Craig Bryant PL0132 at 5-9, Amin ingram
PL0173 at 4-11. Mr. Ingram's job assignment was shower cleaner,
and when it came to asking Miller for scrub pads to properly
clean the shower Miller tore a piece of floor pad used to shine
the floor of the Unit Manager's area and told Ingram that scrub
pads cost to much. So instead Ingram used the lids of Peanut
Butter Jars to scrub away the gummy substanance.

"The Eighth Amendment imposes upon prison officials a duty

to provide humane conditions of confinement".., see Allah vs.
Bartkowski 574 F. App'x 135, 138 (3rd Cir 2014) Miller as Unit
Manager it is his responsibility to provide cleaning supplies for
prisoners to properly clean their living areas (prison cells)
which is universally understood as required see Gates vs. Cook
376 F.3d 323, 32-33, Hoptowit vs. Spellian 753 F.2d 779, 784 (9th
Cir 1985) Rommas vs. Lomm 639 F.2d 559, 569-570 (10th cir 1980)
and is at fault for the nonavailabilty of cleaning agents.
Prisoners of D-block use  cosmetic items from the prison
commissary to clean their cells because cleaning supplies are not
passed out see Affidavit of Corey Gibbs PL0128 at 13, Craig
Bryant PL0133 at 13, Dorian Daniels PL0137 at 4-6, Marvin
Alsbrooks Pl0140 at 12, Day'mere Wisher PL0145 at 9, Charles
miles PL0148 at 13, Jonathatn Rousin PL0158 at 6, Jamir Harris
PL0161 at 5-6, Tracey Flecher PL0171 at 7, and Elmer Williams
PL0181 at 17. This treatment is not consistent with the standards
of a evolving society. There is spit on the walls and blood
stains on the floor, see (PL 0214   ) the same floor that gets
mopped according to Miller once a month                    and
has represented so  in response to administrative grievances filed is
that the housing keeping plan is up on the housing area. Miller
has been the Unit Manager of D-block for years and has acted with
deliberate indiffernce to the unconstitutional conditions of
confinement that he created by his refusal to provide cleaning
supplies to the housing area of D-block contrary to prison rule

and law. Defendant Kuhn as Unit Manager of D-block was
Deliberately Indiffernt to the inhumae conditions of confinement
of the Plaintiff and is not absolved from liability either, the
Plaintiff in the attemps to be moved off of the housing area, has
made mention to Kuhn about the problem of holes in the roof,
along with the sanitation problems of the housing area which
included the pigeon infestation, the plaintiff being splashed by
pigeon dung, no attempts by housing staff for the removal bird
dung on floors,  walls, light fixtures and they were never
cleaned. Showers never properly cleaned with black mold in the
crevices, dark sticky substances on the shower curtains, and
wooden stair ways which are in violation of the fire safety code,
these can and are the cause of the spread of fires in in
industrial buildings, before the filing of grivance #733150.
PL O2I5 . In which Miller defended the inactions of Kuhn and
justifies the gross conditions of the housing area in response to
the the filing. Defendant Sampsel, Facility Manintenance Manager
for Rockview was deliberately indiffernt to the unconsitutional
conditions of the Plaintiff by his refusal to comply and respond
to the numerous work orders from D-block staff to have the layers
of bird feecees removed from the walls and light fixture of D-
block in fact those work orders were canceled see PL0004-06,0009.
By definition of DOC Policy all defendants of the Safety
Committee, McMahon, Haldman, Breese, T.Miller, Houser, and
Sampsel are duty bound to make inspection of the housing areas to

make sure that all health, safety, and sanitation violations are resolved. See PL0197 at sect. C

Defendant Breese was deliberately Indiffernt to the unconstitutional conditions of D-block and the Plaintiff's overall health and well being by not complying with modern fire safety code regulations for the housing area of D-block, theres no sprinkler systems, fire alarms, and the fire surpressant system is alway out of order, as stated and admitted by Breese, by being a ongoing fire alarm problem seePL0096, the fire surpression system is used by corrections officers on the housing area as air conditioner and continually breaks the system. see Affidavit of Jamil Cooper PL0248 , Peter Murphy PL0125 at 21, Day'mere Wisher PL0144 at 4-5, Charles Miles PL0147 3-6, and Tracey Flecther PL0172 at 11.  Prisoners have the right to not be subjected to the unreasonable threat of injury or death by "fire" and need not wait until actual casualties to occur in order to obtain relief from such situations, this understanding is universal not only in this circuit. see Tilery vs. Owens 719 F.Supp 1256, 1279 (W.D. Pa 1989) but also see hoptowit vs. Spellman 753 F.2d at 784, and Hadix vs. Johnson 367 F.3d 513, 525 (6th Cir 2004) Dimarzo vs. Cahill 575 F.2d 15, 18 (1st Cir 1978) All named defendants of the Safety Committee are deliberately indiffernt to the Fire Safety violations of the housing area.

Defendant Weaver is Deliberately Indiffernt to the

inhumane conditions of the inamte dinning hall and defendant
Sampsle also is and was Deliberately Indiffernt to the inhumane
conditions of the inmate dinning hall in violation of the Eighth
Amendment of the United States constitution.

Defendant Weaver "Weaver" is the Food Service Manager of the
culinary Dept. at Rockview and is also a member of the of the
Safety committee. Weaver testified that he personally completes
an inspection of oven(s),warmer(s),SteamTables andHot Boxes that
are being used to keep the foods being served during the meal
time every month along with weeekly inspections delegated to his
staff see PL0073. The Rockview culinary building is made up of
three dinning halls servery #1, 2, and 3.

Food is one of the basic necesities of life, and is
protected by the Eighth Amend of the U.S. Constitution. Inmates
must be served nutritionally adequate food that is prepared and
served under conditions which do not present an  immediate danger
to their health and well being.... see Duran vs. Merline 923
F.Supp. 2d 702, 720 (3rd Cir 2013) In the operating complaint
WEaver was deliberately indiffernt to the unconsitutional
conditoins of the Rockview Culinary dept. when Weaver allowed for
foods to be served at below proper temperatures knowing that the
steamtables, hotboxes and other machines purposed to maintain the
warmth for cooked foods being served to the Plaintiff and other
prisoners at Rockview were inoperable and had the potential to

16

make prisoners sick. Mr. Cooper filed grievance #799312 after
been served cold food, when the Plaintiff talked to culinary
staff about how the food was cold, and asked for a hot portion,
the Plaintiff was informed that "maintenance has been told
numerous times".... This was a issue for over six months.

   Weaver was made aware of the hot-wells for serving lines was
inoperable and replacements according to Weaver was made durring
the spring of 2020. see (PL0074 at 3) Mr. Cooper filed grievance
#799312 on the date of April 29, 2019 see PL 0216   .

   Weaver testified that maintenance concerns related to the
repairs of the hot wells was forwarded to the Maintenance
department and that three work orders were submitted in 2019
according to his testimoney. see (PL0074-75 at 7) however his
testimoney is belied by that of Sampsel the facility maintenance
manager (also a safety committee member) when asked about how
many maintence repair orders was filed by the culinary building
from 2018-2019 related to the steam tables and warmers in servery
#'s 1,2, and 3 Sampsel's answer was "none" see (PL0102 at 10 and
11) the Maintenance managers testimony further backs up the
testimony of the Plaintiff see affidavit of Jamil Cooper
PL 253 at 12 . in that the belief of the culinary manager is not
that foods are tobe served properly; but fast enough to get the line
movement over with.    Sampsel has to take blame also for the
cold meals being served because Culinary staff blames maintenance

department for not properly responding to the work orders
requesting for the service of the broken machines, three times
culinary had to file for repairs with the maintenance department
with no response and this is a issue of fact to be decided by a
finder of fact.

Inmates of Rockview including Mr. Cooper are required to eat
meals in dining halls with roofs that are deteriorating which
causes a waterfall like atmosphere with water running down the
walls.see (affidavit of Jamil Cooper PL0254 at 64, Marvin Alsbrooks
PL0140 at 11, Rashad Briscoe PL0168-0170 "in it's entriety" John
Jones PL0135 at 2-3 and Tracey Fletcher PL0172 at 14,15) The
dinning hall has water drips from the roof and splashes off of
tables into the plaintiff's face while eating his meals on rainy
day's.

Both defendant's Weaver and Sampsel members of the safety
committee are liable for not making the required monthly
inspections of the structure of the culinary building. Weaver is
liable for the deteriorated conditions of the roof to the inmate
Dining Hall, and allowing for inmates to continue to eat in the
waterfall like atmosphere, according to Weaver he knew that the
roof was leaking and that he entered a work order on the date
December 10, 2019 to have the roof fixed see PL0080), however
according to defendnate Sampsel no work order was ever submitted
to his office indicating that the roof of the inmate dinning hall

was in need of repair see (Interrogatory Response of Sampsel
PL0102 at 8) was the work order filed by Weaver something created
fraudulently? Why is it that the sworn interrogatory response of
Sampsel contradicts the work order produced by Weaver? The issue
of the defendants acts of deliberate indiffence to the conditions
of the inmate dinning halls are a matter of fact to be resolved
by a fact finder.

Defendant's Kuhn, Miller, Breese, Sampsel, McMahon, Houser,
and Haldman were deliberately indiffernt to the inhumane
conditions of confinement subjected to the plaintiff when his
cell was flooded on two separarte occasions. see Doc 168 ¶ 9i,101 .
Defendant's memebers of the safety committee ignored the need to
replace the deteriated roof, and to make the required structural
integrity inspections of the housing area namely the roof of D-
block. So on the date of december 03, 2018 Mr. Cooper woke up at
5:00am to a river of water in his prison cell, at least four
inches deep damaging rugs, sneakers, towels, clothing, along with
numerous files related to other active prison litigation. The
Plaintiff filed grievance#755488.(PL 0220 ) Talked to his
counselor Mr.Serefini whom notified the Principal of the
Education department that Mr.Cooper was in possession of certain
books checked out of the library that was damaged during the
flood, there was never a determination of how long the waters
flooded into the plaintiff's cell or where the waters came from,

(19)

even after being forced by SOIGA[2] to give a proper investigative response to grievance #775448 Defendant Superintendent MArk Garman stated "[n]o explaintion can be given for the alleged water in your cell on the date of December 3rd 2018"..., however the Mr. Cooper was reimbursed for the destroyed copies of "5" differnt DOC procedure manuals. see (PL0243) there is no reason given for the where the waters came from. Inspite of the fact that the Plaintiff filed a immediate grievance four days after his cell was flooded stating in the body of the grievance his intention to sue due to the damage of his property. (PL0221) Mr. Cooper was not moved from his cell.

Defendants Holdren, J. Coudriet, R.Best, Fisher, and Baney, were all deliberately indiffernt to the inhumane conditions of confinement of the Plaintiff on the date of December 3, 2018 while working on D-block during the early morning hours while the plaintiff and other inmates of D-block was sleep defendants watched while flooding waters entered in the plaintiff's cell while they made over night manditory walk arounds and during the numorous overnight counts none of the defendant's made a over night announcement giving notice to the plaintiff about the flooding waters entering his cell see(affidavit of Jamil Cooper PL0252 at 50) and Terrell Vines PL0142 1-6) Terrel Vines asked two over night officers where the water is coming from, and they stated I don't know. (PL1042 at3) Defendants corrections officers

3 2.Secretary's Office of Inmate Grievances and Appeals

have a duty to notify inmates of health hazards and risks to
saftey or even destruction of inmate property. Notification of
dirty flood waters entering into inmate cells while they are
sleeping. Neither was a work order entered or any other report
about the events of the night. Each defendant was individually
aware of the dangers of the flood waters and they were protected
by Rockview Administrative Staff at every level of the grievance
appeal process Mr. Cooper was not provided with the identies of
the officers working on D-block that night and for video of the
proper night of the flood. Because of the absence of the video it
is easy for defendants to allege that Mr.Cooper's cell was never
flooded (PL0243) and because of the descrepancy there exists a
issue of fact to be resolved by a fact finder.

The Purupose of the Safety Committee with it's inspections
and protocols are for the prevention of things like unexplained
overnight floods in inmates cells without the understanding of
how it happen or why it happen to prevent future injuries.

Mr.Cooper was not allowed to move so it was surprise when
his prison cell was flooded again. On the date of January 23,
2019 the vent inside of cell number 416 on D-block was gushing
water out of it at around 8:20pm see grievnace #784957
(PL0222-0223) Mr. Cooper was housed in cell #420 some 20feet
away, the Plaintiff woke up around 4am and noticed the massive
flood waters in his cell about 4inches deep, the Plaintiff looked
up and down the tier and noticed water everywhere spilling from

multiple levels of the housing area and waited a hour until a
corrections officer to walk past his cell the Plaintiff was not
notified about the flood until he awoke there was not
announcement made by the officers present on the housing area
that night officers B.Snyder, D. Baney, B.Eyer, and N. Fultz made
sercurity rounds and multiple counts of prisoners all night and
made no mention to the Plaintiff to the disastrous incident of
the night causing damage to almost all of the plaintiff'w worldly
possessions in his prison cell. The Plaintiff file a immediate
grievance #784957 (PL0222) and Sampsel answered stating to the
Plaintiff that he would not provide the plaintiff with video of
the night in question and after a remand was issued to Sampsel he
stated the interior drain was shited causing motar to break away
and that melting snow and ice leaked in th housing area. see
PL024 However according to the work orders provided to the
Plaintiff water leaking from vents in the cell have been a
problem was at least four years see PL0001-2, 0012, 0013,
0014(2015)), 0020(water leaking from lights), it is a known fact
that waters coming into the housing area even prisoner cells was
common since 2015 it was known and nothing was done to prevent
this from happen and defendants D-block Unit Managers Kuhn,
Miller, and Safety Committee Members T.Miller. Breese, Sampsel,
McMahon, Haldman, Houser, and Garman are all guilty for being
deliberate indiffernt to the deteriorating roof of D-block which
caused for the events of January 23, 2019, because of such there is a
issue of fact that needs to be resovled by a fact finder.

Defendant McClellan is liable for deliberate indifference to the conditions of confinement of the Plaintiff when on the date of November 20, 2019 during a prison lockdown the prisoner housed next door to the Plaintiff due to a disagreement that that that prisoner had with the cellmate of the Plaintiff, threw on the tier in front of the cell that the Plaintiff occupied, various foods, garbage, and trash. Instead of sending a inmate worker clean up the mess or even to nake the Plaintiff or his cellmate to clean up the garbage, or even getting a broom and a mop himself to clean up the mess Defendant Officer McClellan decided that when he walked by the cell of the Plaintiff that he would kick the food garbage into the cell of the Plaintiff causing food garbage to come onto the cell floor of the plaintiff whereat Mr.Cooper had his shoes and commissary purchased rugs. The Plaintiff filed grievance #836903 see (PL)0224-0228) see (Affidavit of Jamil Cooper PL_____) McClellan never spoke a word to the Plaintiff about how the food garbage macaroni salad and wet bread got in front of the cell. McClellan was never reprimanded for his actions in fact Mr.Cooper had to file his complaint with SOIGA to get a remanded response to the grievance.. see (0228) the defendants have provided video from the date off the above incident and it actually shows how before Defendant McClellan decided to kick the garbage into the plaintiff's cell two other housing officers walked either around the garbage over over the garbage. and basically ignored or avoided the garbage as if it was not a issue neither staff memeber said anything to the plaintiff see video labeld as Plaintiff's DVD from the hours of

_____.

In consisderation of the afore mentioned facts the Plaintiff requests for this Court to rule in his favor and deny the Defendant's Motion for Summary Judgment in relation to the violation of 1983 Eighth Amendment Deliberate Indifference.

Whether Defendants Violated the 1st Amendment prohibition against Retaliation agianst

㉓

Mr. Cooper for his exercise of free speech by his filing of a grievance against Defendant
Defendant McClellan? Yes

> Retaliation Denial of Due Process in Violation of the 1st Amendment of the U.S.
> Constitution against Defendant's McClellan, Newpher, and Unit Manager Miller.

Defendnats newpher and McClelan as written in the Second Amended Complaint issued a

fictitious misconduct (Misoncduct #D428481) against the Plaintiff because of his exercise of the

administrative greivance process whereof Mr. Cooper filed grievance #836903 (PL0224-0225)

against McClellan for kicking food garbage into his cell. Newpher issued the misconduct on the

date of 2/22/20 with McClellan listed as involved and alleging that Mr.Cooper was seen entering

and then exiting another cell that was not his own with a laundry bag of comisary items.

Defendant Newpher "Newpher" hten confiscated the bag from the plaintiff and McClellan

esscorted the Plaintiff back to his cell. The Misconduct report noted that it was confirmed that

Cooper did not rob the cell. (PL0230) The Plaintiff was charged with #43 pressence in a

unauthorized area and #44 Loaning and Barrowing. And appeared before Unit Manager Miller

for a informal resolution hearing over the Misconduct, and was sanctioned to 14days cell

restriction and his confiscated items could not be found. To state a retaliation claim under the

First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff

must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241

F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some

'adverse action' at the hands of prison officials." See Id. (quoting Allah v. Seiverling, 229 F.3d

220, 225 (3d Cir. 2000)). This requirement is satisfied when the adverse action is "sufficient 'to

deter a person of ordinary firmness' from exercising his First Amendment rights." See Id.

(quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove

that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision

to discipline him." See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). The Third Circuit has held that [F]alsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendments guarantees of access to the courts see Smith vs. Mensigner 293 F.3d 641, 653 (3rd Cir 2002)

Because the Plaintiff did not have a chane to explain his versioin of the events at the hearing Mr.Cooper in his appeal explained how the Misconduct was written out of retaliation and how it was related to his filing of grievance #836903 see(Pl)0232)  and how  earlier that week Mr.Cooper was approached by Newpher and asked to "let the issue go" see Affidavit of Jamil Cooper. (PL_____)

According to the Amended Complaint Mr.Cooper was approached by Newpher after Mr. Cooper's continuous attempts to get L.T. Mondy to answer grievance 836903 by his filing of successive other grievances agaisnt Monday and by filings to SOIGA. Then a  few days later the Plaintiff recieved Mondy's response. According to the Amended Complaint the confiscated items was never present at the hearing becaused they were never logged in through the proper chain of custody see (PL_____) and Admissions of Unit Manager Miller (PL_____)

The Plaintiff was charged with presence in a unathorized area and Loaning and Barrowing there is no DOC definition for "Loaning and Barrowing" but according to the Merrian Webster dictionary the word Loan is defined as Money let out at interest also something furnished for the barrower's temporary use.., and the word barrow means to take or receive (something) temporary and with intent to return. By basic reading of the definition of the two words it means that one person has to loan and the other has to barrow, but Mr.Cooper was the

only person charged. Mr.Cooper according to the operating complaint at (_____) was trading food items wiht another prisoner one Mr. Michael Boyd who testifies that "First of all nobody coomes into my cell that don't live there" and It was crazy that Jamil got the misconduct for loaning and barrowing because it takes two people for that charge to stick, and I didn't get a misconduct and my cellmate at the time didn't get one either".... see Declarartion of Michael Boyd, at (Pl 0151 at 6-7).

In consideration of the aforementioned facts that Plaintiff represents that the defendant's have not fulfilled the requirements to establish that there is no issue of Material Fact required for the determination by a fact finder. The Plaintiff request for the court to find in his favor and against the defendants for the violation of Plaintiff's 1st Amendment right not to be Retaliated against.

By: _____
Jamil Cooper #EZ-3208
SCI-Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501

(26)

## CERTIFICATE OF SERVICE

I hereby Certify that I have caused to be served upon the below named party's a copy of the Plainitiff's Response in Opposition to Defendant's Motion For Summary Judgment on the date below by way of First Class U.S. Mail and that such service satisfies the service requirements of the Federal rules of Civil procedures.

Lauren Gillius
Office of Attorney General
Civil Division 15th Floor
Strawberry Square
Harrisburg, PA 17120

Date: 12-23-2024

By: _____
Jamil Cooper #EZ-3208
SCI-Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501

